Tionna Carvalho (SBN 299010)
Email: tcarvalho@slpattorney.com
David W. Lunn (SBN 198842)
Email: dlunn@slpattorney.com
Mani Arabi (SBN 285558)
Email: maribi@slpattorney.com
**STRATEGIC LEGAL PRACTICES**
**A PROFESSIONAL CORPORATION**
1888 Century Park East, 19th Floor
Los Angeles, CA 90067
Telephone:  (310) 929-4900
Facsimile:   (310) 943-3838

Attorneys for Plaintiff,
KIMBERLY A MATTEI

Steven D Park (SBN 215219)
spark@parklawless.com
John R. Lawless (SBN 223561)
jlawless@parklawless.com
Vincent Tremonti (SBN 301571)
vtremonti@parklawless.com
PARK LAWLESS & TREMONTI LLP
515 South Flower Street, 18th Floor
Los Angeles, CA 90071
213-640-3770
213-640-3015

Attorneys for Defendants
FCA US, LLC

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| KIMBERLY A MATTEI,<br><br>            Plaintiff,<br><br>     v.<br><br>FCA US, LLC; and DOES 1<br>through 10, inclusive,<br><br>            Defendants. | Case No.: 3:24-cv-09273-SI<br><br>Judge: Hon. Susan Illston<br><br>**JOINT PROPOSED JURY INSTRUCTIONS**<br><br>Pretrial Conference: January 20, 2026<br>Trial Date: February 2, 2026 |

The parties, Plaintiff KIMBERLY MATTEI and Defendant FCA US, LLC, hereby submit the attached jointly proposed jury instructions for trial in this matter.

I.    Agreed Upon Instructions

## CACI JURY INSTRUCTIONS

| No. | Title | Source | Page |
|---|---|---|---|
| 1. | Insurance | CACI 105 | |
| 2. | Wealth of Parties | CACI 117 | |
| 3. | Failure to Promptly Repurchase of Replace New Motor Vehicle After Reasonable Number of Repair Opportunities – Essential Factual Elements | CACI 3201 | |
| 4. | "Repair Opportunities" Explained | CACI 3202 | |
| 5. | "Substantially Impaired" Explained | CACI 3204 | |
| 6. | Failure to Begin Repairs Within Reasonable Time or to Complete Repairs Within 30 Days – Essential Factual Elements (Civ. Code, § 17932.2(b)) | CACI 3205 | |
| 7. | Breach of Implied Warranty of Merchantability – Essential Factual Elements | CACI 3210 | |
| 8. | Duration of Implied Warranty | CACI 3212 | |
| 9. | Affirmative Defense – Unauthorized or Unreasonable Use | CACI 3220 | |

| 10. | Continued Reasonable Use Permitted | CACI 3230 | |
| 11. | Continuation of Express or Implied Warranty During Repairs (Civ. Code, § 1795.6) | CACI 3231 | |
| 12. | Restitution from Manufacturer – New Motor Vehicle (Civ. Code, §§ 1793.2(d)(2), 1794(b)) | CACI 3241 | |
| 13. | Incidental Damages | CACI 3242 | |
| 14. | Consequential Damages | CACI 3243 | |
| 15. | Civil Penalty – Willful Violation | CACI 3244 | |
| 16. | Jurors Not to Consider Attorney Fees and Court Costs | CACI 3964 | |
| 17. | Insurance | CACI 5001 | |

## NINTH CIRCUIT MODEL JURY INSTRUCTIONS

| No. | Title | Source | Page |
|-----|-------|--------|------|
| 18. | Duty of Jury (Court Reads Instructions at the Beginning of Trial but Does Not Provide Written Copies) | Ninth Circuit Model, Civil 1.3 | |
| 19. | Claims and Defenses | Ninth Circuit Model, Civil 1.5 | |
| 20. | Burden of Proof – Preponderance of the Evidence | Ninth Circuit Model, Civil 1.6 | |
| 21. | Burden of Proof – Clear and Convincing Evidence | Ninth Circuit Model, Civil 1.7 | |

| No. | Title | Source | Page |
|-----|-------|--------|------|
| 22. | What is Evidence | Ninth Circuit Model, Civil 1.9 | |
| 23. | What is Not Evidence | Ninth Circuit Model, Civil 1.10 | |
| 24. | Evidence for Limited Purpose | Ninth Circuit Model, Civil 1.11 | |
| 25. | Direct and Circumstantial Evidence | Ninth Circuit Model, Civil 1.12 | |
| 26. | Ruling on Objections | Ninth Circuit Model, Civil 1.13 | |
| 27. | Credibility of Witnesses | Ninth Circuit Model, Civil 1.14 | |
| 28. | Conduct of the Jury | Ninth Circuit Model, Civil 1.15 | |
| 29. | No Transcript Available to Jury | Ninth Circuit Model, Civil 1.17 | |
| 30. | Taking Notes | Ninth Circuit Model, Civil 1.18 | |
| 31. | Questions to Witnesses by Jurors | Ninth Circuit Model, Civil 1.19 | |
| 32. | Bench Conferences and Recesses | Ninth Circuit Model, Civil 1.20 | |
| 33. | Outline of Trial | Ninth Circuit Model, Civil 1.21 | |

| No. | Title | Source | Page |
|-----|-------|--------|------|
| 34. | Cautionary Instructions | Ninth Circuit Model, Civil 2.0 | |
| 35. | Stipulations of Fact | Ninth Circuit Model, Civil 2.2 | |
| 36. | Deposition in Lieu of Live Testimony | Ninth Circuit Model, Civil 2.4 | |
| 37. | Use of Interrogatories | Ninth Circuit Model, Civil 2.11 | |
| 38. | Use of Requests for Admissions | Ninth Circuit Model, Civil 2.12 | |
| 39. | Expert Opinion | Ninth Circuit Model, Civil 2.13 | |
| 40. | Charts and Summaries Not Received in Evidence | Ninth Circuit Model, Civil 2.14 | |
| 41. | Charts and Summaries Received in Evidence | Ninth Circuit Model, Civil 2.15 | |
| 42. | Duty to Deliberate | Ninth Circuit Model, Civil 3.1 | |
| 43. | Consideration of Evidence – Conduct of the Jury | Ninth Circuit Model, Civil 3.2 | |
| 44. | Communication with Court | Ninth Circuit Model, Civil 3.3 | |
| 45. | Readback or Playback | Ninth Circuit Model, Civil 3.4 | |

| No. | Title | Source | Page |
|---|---|---|---|
| 46. | Return of Verdict | Ninth Circuit Model, Civil 3.5 | |
| 47. | Post-Discharge Instruction | Ninth Circuit Model, Civil 3.9 | |
| 48. | Corporations and Partnerships – Fair Treatment | Ninth Circuit Model, Civil 4.1 | |

## II.    Disputed Instructions

## PLAINTIFF'S SPECIAL JURY INSTRUCTIONS

| Special Instruction Number | Title of Instruction | Authority | Refused | Withdrawn |
|---|---|---|---|---|
| Plaintiff's Proposed Special Instruction No. 49 | Dealership Is Authorized Repair Agent | *Ibrahim v. FCA US, LLC,* 214 Cal.App.3d 878 (1989). | | |
| Plaintiff's Proposed Special Instruction No. 50 | Inference of Warrantable Defect | *Milicevic v. Mercedes-Benz USA, LLC*, 256 F.Supp.2d 1168, 1179 (D. Nev. 2003); *Milicevic v. Fletcher Jones Imports, Ltd.*, 402 F.3d 912, 919 (9th Cir. 2005); *Jensen v. BMW of N Am.*, 35 Cal. | | |

| | | | | |
|---|---|---|---|---|
| | | App. 4th 112, 128 (1995) | | |
| Plaintiff's Proposed Special Instruction No. 51 | Affirmative Duty of Defendant | Cal. Civ. Code 1793.2(d)(2); *Santana v. FCA US, LLC*, 56 Cal. App. 5th 334, 347-48 (2020); *Krotin v. Porsche Cars North America, Inc.* 38 Cal.App.4th 294, 302 (1995); *Lukather v. General Motors LLC*, 181 Cal. App. 4th 1041, 1049 (2010); *Kirzhner v. Mercedes-Benz USA, LLC*, 9 Cal. 5th 966, 971 (2020). | | |
| Plaintiff's Proposed Special Instruction No. 52 | No Further Visits Necessary | *Robertson v. Fleetwood Travel Trailers of California, Inc.*, 144 Cal. App. 4th 785, 802-803 (2006) | | |
| Plaintiff's Proposed Special Instruction No. 53 | Use of Available Information | Cal. Civ. Code 1794(c); *Kwan v. Mercedes-Benz of N. Am., Inc.*, 23 Cal. App. 4th 174, 186 (1994); *Lukather v. Gen. Motors, LLC*, 181 Cal. App. 4th 1041, 1051-1052 (2010); *Krotin v. Porsche Cars N.* | | |

| | | | | |
|---|---|---|---|---|
| | | *Am., Inc.*, 38 Cal. App. 4th 294, 303 (1995), *as modified on denial of reh'g* (Sept. 14, 1995 | | |
| Plaintiff's Proposed Special Instruction No. 54 | Obstructive Policies | Cal. Civ. Code 1794(c); *Oregel v. Am. Isuzu Motors, Inc.*, 90 Cal. App. 4th 1094, 1105, 109 (2001). | | |
| Plaintiff's Proposed Special Instruction No. 55 | Promptness | Cal. Civ. Code 1793.2(d)(2); *Lukather v. Gen. Motors, LLC*, 181 Cal. App. 4th 1041, 1049 (2010). | | |
| Plaintiff's Proposed Special Instruction No. 56 | Justifiable Revocation of Acceptance | Cal. Civ. Code 1793.2(b); Cal. Civ. Code 1794(b)(1); *Ramos v. Mercedes-Benz USA, LLC*, 55 Cal. App. 5th 220 | | |
| Plaintiff's Proposed Special Instruction No. 57 | Damages for Failure to Complete Repairs Within 30 Days or Commence Repairs | Cal. Civ. Code 1793.2(b); Cal. Civ. Code 1794(b)(1); *Ramos v. Mercedes-Benz USA, LLC*, 55 Cal. App. 5th 220 | | |

| | within a Reasonable Time | | | |
|---|---|---|---|---|

## DEFENDANT'S SPECIAL JURY INSTRUCTIONS

| Number | Title | Source | Page |
|---|---|---|---|
| Defendant's Proposed Special Instruction No. 58 | Damages Under Multiple Legal Theories | Damages Under Multiple Legal Theories | |
| Defendant's Proposed Special Instruction No. 59 | Affirmative Defense- Statute of Limitations | CACI 3222 | |
| Defendant's Proposed Special Instruction No. 60 | Substantially Impaired" Further Explained | CACI 3204, Sources and Authority (quoting *Lundy v. Ford Motor Corp.*, 87 Cal. App. 4th 472, 478 (2001) | |
| Defendant's Proposed Special Instruction No. 61 | Implied Warranty Of Merchantability Further Explained | CACI 3210, Sources and Authority (quoting *American Suzuki Motor Corp. v. Superior Court*, 37 Cal. App. 4th 1291, 1295-1296 (1995); *Brand v. Hyundai Motor Am.*, 226 Cal. App. 4th 1538, 1546 (2014); *Keegan v. Am.* | |

| | | | |
|---|---|---|---|
| | | *Honda Motor Co.*, 838 F. Supp. 2d 929, 945 (C.D. Cal. 2012)); *Herrera v. Ford Motor Co.*, 2022 WL 562267, at *6 (C.D. Cal. Feb. 24, 2022) (quoting *Brand*); *Resnick v. Hyundai Motor Am., Inc.*, 2017 WL 1531192, at *12 (C.D. Cal. April 13, 2017) (citing *American Suzuki*, *Brand*, and *Keegan*) | |
| Defendant's Proposed Special Instruction No. 62 | Implied Warranty Of Merchantability – Revocation Required | Cal. Comm. Code § 2608; *Simgel Co., Inc. v. Jaguar Land Rover N. Am., LLC*, 55 Cal. App. 5th 305, 315-316 (2020). | |
| Defendant's Proposed Special Instruction No. 63 | Implied Warranty Damages | *Simgel Co., Inc. v. Jaguar Land Rover N. Am., LLC*, 55 Cal. App. 5th 305, 315-316 (2020). | |
| Defendant's Proposed Special Instruction No. 64 | Relevance Of Continued Use | CACI 3230 Directions for Use (citing CACI 3204). | |
| Defendant's Proposed Special | Further Relevance Of Continued Use | CACI 3230 Directions for Use (quoting *Ibrahim v. Ford Motor Co.*, | |

| | | | |
|---|---|---|---|
| Instruction No. 65 | | 214 Cal. App. 3d 878,898 (1989) | |
| Defendant's Proposed Special Instruction No. 66 | Additional Exclusions from Vehicle Purchase Price | *Canesco v. Ford Motor Co.*, 570 F. Supp. 3d 872, 894 (S.D. Cal. 2021); *Carillo v. FCA USA, LLC*, 546 F. Supp. 3d 995, 1002 (C.D. Cal. 2021); *Herrera v. Ford Motor Co.*, 2022 WL 562267, at *5 (C.D. Cal. Feb. 24, 2022); *Tovar v. FCA US LLC*, 2021 WL 3468111, at *4 (C.D. Cal. Apr. 23, 2021) *Rivera v. Ford Motor Co.*, 2020 WL 1652534, at *5 (C.D. Cal. Feb. 10, 2020); *De Leon v. Ford Motor Co.*, 2019 WL 7195325, at *4 (C.D. Cal. Nov. 13, 2019) *Rupay v. Volkswagen Grp. of Am. Inc.*, 2012 WL 10634428, at *5 (C.D. Cal. Nov. 15, 2012) . | |
| Defendant's Proposed Special Instruction No. 67 | "Willful Violation" Explained | CACI 3244 Sources and Authority (quoting *Lukather v. General Motors, LLC*, 181 Cal. App. 4th 1041, 1051; *Kwan v. Mercedes Benz of N. Am.*, 23 Cal. App. 4th 174, 185 (1994); *Jensen v. BMW of N. Am., Inc.*, 35 Cal. App. 4th 112, 136 (1995); *Rupay v. Volkswagen Grp. of Am., Inc.*, 2012 WL 10634428, at *7 (C.D. Cal. Nov. | |

| | | | |
|---|---|---|---|
| | | 15, 2012); *Hatami v. Kia Motors Am., Inc.*, 2009 WL 1396358, at *3 (C.D. Cal. April 20, 2009). | |
| Defendant's Proposed Special Instruction No. 68 | "Willful Violation" Further Explained | *Kwan v. Mercedes-Benz of N. Am., Inc.*, 23 Cal. App. 4th 174, 185; *Oregel v. Am. Isuzu Motors, Inc.*, 90 Cal. App. 4th 1094, 1104 (2001) (quoting *Kwan*); *Jensen v. BMW of N. Am., Inc.*, 35 Cal. App. 4th 112, 136 (1995); *Kirzhner v. Mercedes-Benz USA, LLC*, 9 Cal. 5th 966, 984 (2020); *Dominguez v. Am. Suzuki Motor Corp.*, 160 Cal. App. 4th 53, 59 (2008); *Robertson v. Fleetwood Travel Trailers of Cal., Inc.* (2006) 144 Cal.App.4th 785, 815 (error not to admit evidence of the manufacturer's "belief" in its compliance); *Plate v. Sun-Diamond Growers* (1990) 225 Cal.App.3d 1115, 1124; *People v. Harris* (2015) 234 Cal.App.4th 671, 700, 184 Cal.Rptr.3d 198. | |
| Defendant's Proposed Special Instruction No. 69 | Inability to Replicate Problem May Be Evidence of Lack of "Willfulness" | *Dominguez v. Am. Suzuki Motor Corp.*, 160 Cal. App. 4th 53, 59 (2008) | |

Dated:  January 7, 2026

Respectfully submitted,
STRATEGIC LEGAL PRACTICES, APC.

By: _____

Tionna Carvalho
David W. Lunn
Mani Arabi
Attorneys for Plaintiff
KIMBERLY A MATTEI

Dated: January 4, 2026

**PARK LAWLESS & TREMONTI LLP**

By:   _/s/ Charles Cavanagh_____

Charles C. Cavanagh

Michael Lavetter

Attorneys for Defendant

FCA US LLC

# CACI JURY INSTRUCTIONS

### Jury Instruction Number 1
**Insurance**

You must not consider whether any of the parties in this case has insurance. The presence or absence of insurance is totally irrelevant. You must decide this case based only on the law and the evidence.

Source:  CACI 105

## **Jury instruction Number 2**
## **Wealth of the Parties**

In reaching a verdict, you may not consider the wealth or poverty of any party. The parties' wealth or poverty is not relevant to any of the issues that you must decide.

Source: CACI 117

**Jury Instruction Number 3**

**Failure to Promptly Repurchase of Replace New Motor Vehicle After**

**Reasonable Number of Repair Opportunities – Essential Factual Elements**

Plaintiff claims that FCA US, LLC failed to promptly repurchase or replace a 2021 JEEP GRAND CHEROKEE after a reasonable number of repair opportunities. To establish this claim, Plaintiff must prove all of the following:

1. That Plaintiff purchased a 2021 JEEP GRAND CHEROKEE  distributed by FCA US, LLC;

2. That FCA US, LLC gave Plaintiff a written warranty;

3. That the vehicle had a defect that was covered by the warranty and that substantially impaired its use, value, or safety to a reasonable person in Plaintiff's situation;

4. That Plaintiff delivered the vehicle to FCA US, LLC or its authorized repair facility for repair of the defect;

5. That FCA US, LLC or its authorized repair facility failed to repair the vehicle to match the written warranty after a reasonable number of opportunities to do so; and

6. That FCA US, LLC did not promptly replace or buy back the vehicle.

It is not necessary for Plaintiff to prove the cause of a defect in the 2021 JEEP GRAND CHEROKEE.

A written warranty need not include the words "warranty" or "guarantee," but if those words are used, a warranty is created. It is also not necessary for FCA US, LLC to have specifically intended to create a warranty.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

<u>**Jury Instruction Number 4**</u>
**"Repair Opportunities" Explained**

Each time the 2021 JEEP GRAND CHEROKEE was given to FCA US, LLC or its authorized repair facility for repair counts as an opportunity to repair, even if they did not do any repair work.

In determining whether FCA US, LLC had a reasonable number of opportunities to fix the 2021 JEEP GRAND CHEROKEE, you should consider all the circumstances surrounding each repair visit. FCA US, LLC or its authorized repair facility must have been given at least two opportunities to fix the 2021 JEEP GRAND CHEROKEE or because the Subject Vehicle was later destroyed or because FCA US, LLC or its authorized repair facility refused to attempt the repair.

Source:  CACI 3202

## Jury Instruction Number 5

### "Substantially Impaired" Explained

In deciding whether a reasonable person would believe that the vehicle's defects, if any, substantially impaired the vehicle's use, value, or safety, you may consider, among other factors, the following:

(a) The nature of the defect;

(b) The cost and length of time required for repair;

(c) Whether past repair attempts have been successful;

(d) The degree to which the vehicle could be used while awaiting repair; and

(e) The availability and cost of comparable transportation during the repairs.

Source:  CACI 3204

## <u>Jury Instruction Number 6</u>

**Failure to Begin Repairs Within Reasonable Time or
To Complete Repairs Within 30 Days – Essential Factual Elements
(Civ. Code, § 1793.2(b), CACI 3205)**

Plaintiff claim that they were harmed because FCA US, LLC failed to begin repairs on the 2021 JEEP GRAND CHEROKEE in a reasonable time or repair the vehicle within 30 days. To establish this claim, Plaintiff must prove all of the following:

1.     That Plaintiff purchased a 2021 JEEP GRAND CHEROKEE distributed by and/or manufactured by FCA US, LLC;

2.     That FCA US, LLC gave Plaintiff a written warranty that in the event a defect developed with the vehicle during the warranty period, Plaintiff could deliver the vehicle for repair services to FCA US, LLC's representative;

3.     That the 2021 JEEP GRAND CHEROKEE had defects that were covered by the warranty; and

4.     That FCA US, LLC or its authorized repair facility failed to begin repairs within a reasonable time or complete repairs within 30 days so as to conform to the applicable warranties.

Source:  CACI 3205

1

*Defendant's Statement in Opposition to Instruction*

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## Jury Instruction Number 7

**Breach of Implied Warranty of Merchantability- Essential Factual Elements**

Plaintiff claims that the 2021 Jeep Grand Cherokee did not have the quality that a buyer would reasonably expect. This is known as "breach of an implied warranty." To establish this claim, Plaintiff must prove all of the following:

1. That Plaintiff purchased a 2021 Jeep Grand Cherokee distributed by FCA US, LLC;

2. That at the time of purchase FCA US, LLC was in the business of distributing 2021 Jeep Grand Cherokees for sale to retail buyers; and

3. That the 2021 Jeep Grand Cherokee was not of the same quality as those generally acceptable in the trade or was not fit for the ordinary purposes for which the goods are used.

4. That Plaintiff was harmed; and

5. That FCA US, LLC's breach of the implied warranty was a substantial factor in causing Plaintiff's harm.

Source:  CACI 3210

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

*Plaintiff's Statement in Support the Instruction*

Plaintiff's proposed instruction is identical to CACI 3210 with minimal modification to fit the facts and circumstances of the instant matter.  The Judicial Counsel of California has designated the CACI as "the official instructions for use in the state of California." California Rule of Court 2.1050(a). The use of CACI is "strongly encouraged" and an affirmative rebuttable presumption exists for the use of an applicable CACI instruction if one exists.  CRC 2.1050(e).  CACI 3210 as offered by Plaintiff is clear, comprehensible, and an accurate statement of the law.

**<u>Jury Instruction Number 8</u>**

**Duration of Implied Warranty**

An implied warranty is in effect for three months after the purchase of the 2021 JEEP GRAND CHEROKEE, unless a shorter period is stated in a writing that comes with the 2021 JEEP GRAND CHEROKEE, provided that the shorter period is reasonable. In no event will an implied warranty be in effect for less than 60 days.

The time period of an implied warranty is lengthened by the number of days that the 2021 JEEP GRAND CHEROKEE was made available by Plaintiff for repairs under the warranty, including any delays caused by circumstances beyond Plaintiff's control.

Source: CACI 3212

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## **Jury Instruction Number 9**

### **Affirmative Defense – Unauthorized or Unreasonable Use**

FCA US, LLC is not responsible for any harm to KIMBERLY MATTEI if FCA US, LLC proves that the failure to match the written warranty was caused by unauthorized or unreasonable use of the 2021 JEEP GRAND CHEROKEE after it was sold.

Source:  CACI 3220

**<u>Jury Instruction Number 10</u>**

**Continued Reasonable Use Permitted**

**(CACI 3230)**

The fact that Plaintiff continued to use the 2021 JEEP GRAND CHEROKEE after delivering it for repair does not waive his right to demand replacement or reimbursement. Nor does it reduce the amount of damages that you should award to Plaintiff if you find that he has proved his claim against FCA US, LLC.


Source:  CACI 3230

*Plaintiff's Statement in Support of Instruction*

Plaintiff's proposed instruction is CACI 3230 with minimal modification to fit the facts and circumstances of the instant matter. The Judicial Counsel of California has designated the CACI as "the official instructions for use in the state of California." California Rule of Court 2.1050(a). The use of CACI is "strongly encouraged" and an affirmative rebuttable presumption exists for the use of an applicable CACI instruction if one exists. CRC 2.1050(e). CACI 3230 as offered by Plaintiff is clear, comprehensible, and an accurate statement of the law.

It is established that the continued use of the vehicle after Plaintiff delivered it for repair does not act a waiver of his right to reimbursement and damages. *Jiagbogu v. Mercedes-Benz USA* (2004) 118 Cal.App.4th 1235, 1240–1244; *Ibrahim v. Ford Motor Co.* (1989) 214 Cal.App.3d 878, 897-898. The Directions for Use accompanying CACI 3230 instruct that CACI 3230 be given in order to make this legal concept "clear to the jury." If the jury does not receive CACI 3230, they may reach the improper conclusion that, because Plaintiff continued to use the vehicle after submitting it for repairs, he gave up or compromised his right to recovery herein and reach a verdict or damages award that is contrary to the law.

**<u>Jury Instruction Number 11</u>**

**Continuation of Express or Implied Warranty During Repairs**

**(Civ. Code, § 1795.6, CACI 3231)**

Regardless of what the warranty says, if a defect exists within the warranty period and the 2021 JEEP GRAND CHEROKEE has been returned for repairs, the warranty will not expire until the defect has been fixed. Plaintiff must have notified FCA US, LLC of the failure of the repairs within 60 days after they were completed. The warranty period will also be extended for the amount of time that the warranty repairs have not been performed because of delays caused by circumstances beyond the control of Plaintiff.

Source:  CACI 3231

*Plaintiff's Statement in Support of Instruction*

Plaintiff's proposed instruction is identical to CACI 3231. The Judicial Counsel of California has designated the CACI as "the official instructions for use in the state of California." California Rule of Court 2.1050(a). The use of CACI is "strongly encouraged" and an affirmative rebuttable presumption exists for the use of an applicable CACI instruction if one exists. CRC 2.1050(e). CACI 3231 as offered by Plaintiff is clear, comprehensible, and an accurate statement of the law.

The purpose of CACI 3231 is to clarify to the jury that "[B]y statute, the warranty cannot expire until the problem has been resolved as long as the defendant had notice that the defect had not been repaired." (Civ. Code, § 1795.6(b) as quoted in the Directions for Use accompanying CACI 3231. If CACI 3231 is not provided to the jury, they may reach the improper conclusion that Plaintiff's vehicle's warranty expired during the course of ongoing repairs and therefore Defendant's responsibility to repair preexisting defects ended when the law states that it did not.

## Jury Instruction Number 12

### Restitution from Manufacturer -- New Motor Vehicle

If you decide that FCA US, LLC or its authorized repair facility failed to repair the defect after a reasonable number of opportunities, then Plaintiff are entitled to recover the amounts he proves he paid for the car, including:

1. The amount paid to date for the vehicle, including finance charges and any amount still owed by Plaintiff;

2. Charges for transportation and manufacturer-installed options; and

3. Sales tax, use tax, license fees, registration fees, and other official fees.

In determining the purchase price, do not include any charges for items supplied by someone other than FCA US, LLC.

Plaintiff's recovery must be reduced by the value of the use of the vehicle before it was brought in for repair. FCA US, LLC must prove how many miles the vehicle was driven between the time when Plaintiff took possession of the vehicle and the time when Plaintiff first delivered it to FCA US, LLC or its authorized repair facility to fix the defect.

Multiply this mileage number by the purchase price, including any charges for transportation and manufacturer-installed options, and divide that amount by 120,000. Deduct the resulting amount from Plaintiff's recovery.

Source: CACI 3241

## **Jury Instruction Number 13**

### **Incidental Damages**

KIMBERLY MATTEI also claim additional reasonable expenses for incidental damages according to proof at trial.

To recover these expenses, KIMBERLY MATTEI must prove all of the following:

1. That the expense was actually charged;

2. That the expense was reasonable; and

3. That FCA US, LLC's breach of warranty was a substantial factor in causing the expense.

## Jury Instruction Number 14

### Consequential Damages

KIMBERLY MATTEI also claims additional reasonable expenses for consequential damages according to proof at trial.

To recover these expenses, KIMBERLY MATTEI must prove all of the following:

1. That FCA US, LLC's failure to repurchase the 2021 JEEP GRAND CHEROKEE was a substantial factor in causing damage to KIMBERLY MATTEI ;

2. That the damages resulted from KIMBERLY MATTEI's requirements and needs;

3. That FCA US, LLC had reason to know of those requirements and needs at the time of sale;

4. That KIMBERLY MATTEI could not reasonably have prevented the damages; and

5. The amount of damages.

**<u>Jury Instruction Number 15</u>**

**Civil Penalty --Willful Violation**

Plaintiff claims that FCA US, LLC's failure to repurchase or replace the 2021 JEEP GRAND CHEROKEE after a reasonable number of repair opportunities was willful and therefore asks that you impose a civil penalty against FCA US, LLC A civil penalty is an award of money in addition to a Plaintiff's damages. The purpose of this civil penalty is to punish a defendant or discourage it from committing such violations in the future.

If Plaintiff has proved that FCA US, LLC's failure was willful, you may impose a civil penalty against it. "Willful" means that FCA US, LLC knew what it was doing and intended to do it. However, you may not impose a civil penalty if you find that FCA US, LLC believed reasonably and in good faith that it was not obligated to repurchase the vehicle.

The penalty may be in any amount you find appropriate, up to a maximum of two times the amount of Plaintiff's actual damages.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

_Plaintiff's Statement in Support of Instruction_

Plaintiff's proposed instruction is identical to CACI 3244 with minimal modification to fit the facts and circumstances of the instant matter.  The Judicial Counsel of California has designated the CACI as "the official instructions for use in the state of California." California Rule of Court 2.1050(a). The use of CACI is "strongly encouraged" and an affirmative rebuttable presumption exists for the use of an applicable CACI instruction if one exists.  CRC 2.1050(e).  CACI 3244 as offered by Plaintiff is clear, comprehensible, and an accurate statement of the law.

### Jury Instruction Number 16

**Jurors Not to Consider Attorney Fees and Court Costs**

You must not consider, or include as part as part of any award, attorney fees or expenses that the parties incurred in bringing or defending this lawsuit.

Source:  CACI 3964

**<u>Jury Instruction Number 17</u>**
**Insurance**

You must not consider whether any of the parties in this case has insurance. The presence or absence of insurance is totally irrelevant. You must decide this case based only on the law and the evidence.

Source:  CACI 5001

# NINTH CIRCUIT MODEL JURY INSTRUCTIONS

### Jury Instruction Number 18
### 1.3 Duty of Jury (Court Reads Instructions at the Beginning of Trial but Does Not Provide Written Copies)

Members of the jury: You are now the jury in this case. It is my duty to instruct you on the law.

It is your duty to find the facts from all the evidence in the case. To those facts you will apply the law as I give it to you. You must follow the law as I give it to you whether you agree with it or not. And you must not be influenced by any personal likes or dislikes, opinions, prejudices or sympathy. That means that you must decide the case solely on the evidence before you. You will recall that you took an oath to do so.

At the end of the trial, I will give you final instructions. It is the final instructions that will govern your duties.

Please do not read into these instructions, or anything I may say or do, that I have an opinion regarding the evidence or what your verdict should be.

**<u>Jury Instruction Number 19</u>**
**1.5 Claims and Defenses**

To help you follow the evidence, I will give you a brief summary of the positions of the parties:

The plaintiff, KIMBERLY A MATTEI, asserts that Defendant FCA US, LLC breached its express and implied warranty obligations under the Song-Beverly Consumer Warranty Act. Plaintiff has the burden of proving these claims.

Defendant denies those claims and also contends that Plaintiff's vehicle never suffered any defect that substantially impaired its use, value or safety and that Plaintiff's vehicle was, at all times, reasonably suited for ordinary use. Defendant further contends that it and it authorized repair facilities honored Defendant's warranty obligations and made an offer to repurchase Plaintiff's vehicle promptly after becoming aware of Plaintiff's desire that it do so.

### <u>Jury Instruction Number 20</u>
**1.6 BURDEN OF PROOF—PREPONDERANCE OF THE EVIDENCE**

When a party has the burden of proof on any claim by a preponderance of the evidence, it means you must be persuaded by the evidence that the claim is more probably true than not true.

You should base your decision on all of the evidence, regardless of which party presented it.

## Jury Instruction Number 21
### 1.7 Burden of Proof— Clear and Convincing Evidence

When a party has the burden of proving any claim or defense by clear and convincing evidence, it means that the party must present evidence that leaves you with a firm belief or conviction that it is highly probable that the factual contentions of the claim or defense are true. This is a higher standard of proof than proof by a preponderance of the evidence, but it does not require proof beyond a reasonable doubt.

**<u>Jury Instruction Number 22</u>**
**1.9 What is Evidence**

The evidence you are to consider in deciding what the facts are consists of:

      1. the sworn testimony of any witness;

      2. the exhibits that are admitted into evidence;

      3. any facts to which the lawyers have agreed; and

      4. any facts that I may instruct you to accept as proved.

## Jury Instruction Number 23

### 1.10 What is Not Evidence

In reaching your verdict, you may consider only the testimony and exhibits received into evidence. Certain things are not evidence, and you may not consider them in deciding what the facts are. I will list them for you:

(1) Arguments and statements by lawyers are not evidence. The lawyers are not witnesses. What they [may say] [have said] in their opening statements, closing arguments and at other times is intended to help you interpret the evidence, but it is not evidence. If the facts as you remember them differ from the way the lawyers have stated them, your memory of them controls.

(2) Questions and objections by lawyers are not evidence. Attorneys have a duty to their clients to object when they believe a question is improper under the rules of evidence. You should not be influenced by the objection or by the court's ruling on it.

(3) Testimony that is excluded or stricken, or that you are instructed to disregard, is not evidence and must not be considered. In addition, some evidence may be received only for a limited purpose; when I instruct you to consider certain evidence only for a limited purpose, you must do so, and you may not consider that evidence for any other purpose.

(4) Anything you may see or hear when the court was not in session is not evidence. You are to decide the case solely on the evidence received at the trial.

1

2

### <u>Jury Instruction Number 24</u>
### 1.11 Evidence for Limited Purpose

3   Some evidence may be admitted only for a limited purpose.

4

5   When I instruct you that an item of evidence has been admitted only for a

6   limited purpose, you must consider it only for that limited purpose and not for any

7   other purpose.

8

9   The testimony you are about to hear may be considered only for the limited

10   purpose of [*describe purpose*] and not for any other purpose.

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## Jury Instruction Number 25
### 1.12 DIRECT AND CIRCUMSTANTIAL EVIDENCE

Evidence may be direct or circumstantial. Direct evidence is direct proof of a fact, such as testimony by a witness about what that witness personally saw or heard or did. Circumstantial evidence is proof of one or more facts from which you could find another fact. You should consider both kinds of evidence. The law makes no distinction between the weight to be given to either direct or circumstantial evidence. It is for you to decide how much weight to give to any evidence.

# Jury Instruction Number 26

## 1.13 Ruling on Objections

There are rules of evidence that control what can be received into evidence. When a lawyer asks a question or offers an exhibit into evidence and a lawyer on the other side thinks that it is not permitted by the rules of evidence, that lawyer may object. If I overrule the objection, the question may be answered, or the exhibit received. If I sustain the objection, the question cannot be answered, and the exhibit cannot be received. Whenever I sustain an objection to a question, you must ignore the question and must not guess what the answer might have been.

Sometimes I may order that evidence be stricken from the record and that you disregard or ignore that evidence. That means when you are deciding the case, you must not consider the stricken evidence for any purpose.

### Jury Instruction Number 27
### 1.14 CREDIBILITY OF WITNESSES

In deciding the facts in this case, you may have to decide which testimony to believe and which testimony not to believe. You may believe everything a witness says, or part of it, or none of it.  Proof of a fact does not necessarily depend on the number of witnesses who testify about it.

In considering the testimony of any witness, you may take into account:

(1)    the opportunity and ability of the witness to see or hear or know the things testified to;

(2)    the witness' memory;

(3)    the witness' manner while testifying;

(4)    the witness' interest in the outcome of the case and any bias or prejudice;

(5)    whether other evidence contradicted the witness' testimony;

(6)    the reasonableness of the witness' testimony in light of all the evidence; and,

(7)    any other factors that bear on believability.

Sometimes a witness may say something that is not consistent with something else he or she said. Sometimes different witnesses will give different versions of what happened. People often forget things or make mistakes in what they remember. Also, two people may see the same event but remember it differently. You may consider these differences, but do not decide that testimony is untrue just because it differs from other testimony.

However, if you decide that a witness has deliberately testified untruthfully about something important, you may choose not to believe anything that witness said. On the other hand, if you think the witness testified untruthfully about some things but told the truth about others, you may accept the part you think is true and ignore the rest.

The weight of the evidence as to a fact does not necessarily depend on the number of witnesses who testify. What is important is how believable the witnesses were, and how much weight you think their testimony deserves.

In deciding the facts in this case, you may have to decide which testimony to believe and which testimony not to believe. You may believe everything a witness says, or part of it, or none of it.  Proof of a fact does not necessarily depend on the number of witnesses who testify about it.

In considering the testimony of any witness, you may take into account:

(1)    the opportunity and ability of the witness to see or hear or know the things testified to;

(2)    the witness' memory;

(3)    the witness' manner while testifying;

(4)    the witness' interest in the outcome of the case and any bias or prejudice;

(5)    whether other evidence contradicted the witness' testimony;

(6)    the reasonableness of the witness' testimony in light of all the evidence; and,

(7)    any other factors that bear on believability.

Sometimes a witness may say something that is not consistent with something else he or she said. Sometimes different witnesses will give different versions of what happened. People often forget things or make mistakes in what they remember. Also, two people may see the same event but remember it differently. You may consider these differences, but do not decide that testimony is untrue just because it differs from other testimony.

However, if you decide that a witness has deliberately testified untruthfully about something important, you may choose not to believe anything that witness said. On the other hand, if you think the witness testified untruthfully about some things but

told the truth about others, you may accept the part you think is true and ignore the rest.

The weight of the evidence as to a fact does not necessarily depend on the number of witnesses who testify. What is important is how believable the witnesses were, and how much weight you think their testimony deserves.

1

### Jury Instruction Number 28

2   1.15 Conduct of the Jury

3       I will now say a few words about your conduct as jurors.

4       First, keep an open mind throughout the trial, and do not decide what the
5   verdict should be until you and your fellow jurors have completed your
6   deliberations at the end of the case.

7       Second, because you must decide this case based only on the evidence
8   received in the case and on my instructions as to the law that applies, you must
9   not be exposed to any other information about the case or to the issues it
    involves during the course of your jury duty. Thus, until the end of the case or
10  unless I tell you otherwise:

11      Do not communicate with anyone in any way and do not let
12      anyone else communicate with you in any way about the merits of
        the case or anything to do with it. This includes discussing the case in
13      person, in writing, by phone, tablet, or computer, or any other
14      electronic means, via email, text messaging, or any internet chat room,
        blog, website or application, including but not limited to Facebook,
15      YouTube, the platform "X" formerly known as Twitter,
16      Instagram, LinkedIn, Snapchat, TikTok, or any other forms of
        social media. This applies to communicating with your fellow
17      jurors until I give you the case for deliberation, and it applies to
18      communicating with everyone else including your family
        members, your employer, the media or press, and the people involved
19      in the trial, although you may notify your family and your employer
20      that you have been seated as a juror in the case, and how long you
        expect the trial to last. But, if you are asked or approached in any way
21      about your jury service or anything about this case, you must respond
22      that you have been ordered not to discuss the matter and report the
        contact to the court.
23

24      Because you will receive all the evidence and legal instruction you
25      properly may consider to return a verdict: do not read, watch or
        listen to any news or media accounts or commentary about the case
26      or anything to do with it[,although I have no information that there
        will be news reports about this case]; do not do any research, such
27      as consulting dictionaries, searching the Internet, or using other
28      reference materials; and do not make any investigation or in any

other way try to learn about the case on your own. Do not visit or view any place discussed in this case, and do not use the Internet or any other resource to search for or view any place discussed during the trial. Also, do not do any research about this case, the law, or the people involved—including the parties, the witnesses or the lawyers— until you have been excused as jurors. If you happen to read or hear anything touching on this case in the media, turn away and report it to me as soon as possible.

These rules protect each party's right to have this case decided only on evidence that has been presented here in court. Witnesses here in court take an oath to tell the truth, and the accuracy of their testimony is tested through the trial process. If you do any research or investigation outside the courtroom, or gain any information through improper communications, then your verdict may be influenced by inaccurate, incomplete or misleading information that has not been tested by the trial process. Each of the parties is entitled to a fair trial by an impartial jury, and if you decide the case based on information not presented in court, you will have denied the parties a fair trial. Remember, you have taken an oath to follow the rules, and it is very important that you follow these rules.

A juror who violates these restrictions jeopardizes the fairness of these proceedings [, and a mistrial could result, requiring the entire trial process to start over]. If any juror is exposed to any outside information, please notify the court immediately, by sending a note through the [clerk] [bailiff] signed by any one or more of you.

### <u>Jury Instruction Number 29</u>
**1.17 NO TRANSCRIPT AVAILABLE TO JURY**

During deliberations, you will have to make your decision based on what you recall of the evidence. You will not have a transcript of the trial. I urge you to pay close attention to the testimony as it is given.

If at any time you cannot hear or see the testimony, evidence, questions or arguments, let me know so that I can correct the problem.

## Jury Instruction Number 30
### 1.18 Taking Notes

If you wish, you may take notes to help you remember the evidence. If you do take notes, please keep them to yourself until you go to the jury room to decide the case. Do not let notetaking distract you. When you leave, your notes should be left in the [courtroom] [jury room] [envelope in the jury room]. No one will read your notes.

Whether or not you take notes, you should rely on your own memory of the evidence. Notes are only to assist your memory. You should not be overly influenced by your notes or those of other jurors.

## Jury Instruction Number 31
## 1.19 QUESTIONS TO WITNESSES BY JURORS

You will be allowed to propose written questions to witnesses after the lawyers have completed their questioning of each witness. You may propose questions in order to clarify the testimony, but you are not to express any opinion about the testimony or argue with a witness. If you propose any questions, remember that your role is that of a neutral fact finder, not an advocate.

Before I excuse each witness, I will offer you the opportunity to write out a question on a form provided by the court. Do not sign the question. I will review the question with the attorneys to determine if it is legally proper.

There are some proposed questions that I will not permit, or will not ask in the wording submitted by the juror. This might happen either due to the rules of evidence or other legal reasons, or because the question is expected to be answered later in the case. If I do not ask a proposed question, or if I rephrase it, do not speculate as to the reasons. Do not give undue weight to questions you or other jurors propose. You should evaluate the answers to those questions in the same manner you evaluate all of the other evidence.

By giving you the opportunity to propose questions, I am not requesting or suggesting that you do so. It will often be the case that a lawyer has not asked a question because it is legally objectionable or because a later witness may be addressing that subject.

### Jury Instruction Number 32
### 1.20 BENCH CONFERENCES AND RECESSES

From time to time during the trial, it may become necessary for me to talk with the attorneys out of the hearing of the jury, either by having a conference at the bench when the jury is present in the courtroom, or by calling a recess.  Please understand that while you are waiting, we are working.  The purpose of these conferences is not to keep relevant information from you, but to decide how certain evidence is to be treated under the rules of evidence and to avoid confusion and error.

Of course, we will do what we can to keep the number and length of these conferences to a minimum.  I may not always grant an attorney's request for a conference.  Do not consider my granting or denying a request for a conference as any indication of my opinion of the case or of what your verdict should be.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## Jury Instruction Number 33
## 1.21 OUTLINE OF TRIAL

Trials proceed in the following way:  First, each side may make an opening statement.  An opening statement is not evidence.  It is simply an outline to help you understand what that party expects the evidence will show.  A party is not required to make an opening statement.

The Plaintiff will then present evidence, and counsel for the defendant may cross-examine.  Then the defendant may present evidence, and counsel for the Plaintiff may cross-examine.

After the evidence has been presented, I will instruct you on the law that applies to the case and the attorneys will make closing arguments.

After that, you will go to the jury room to deliberate on your verdict.

**Jury Instruction Number 34**

**2.0 Cautionary Instructions**

**At the End of Each Day of the Case:**

As I indicated before this trial started, you as jurors will decide this case based solely on the evidence presented in this courtroom. This means that, after you leave here for the night, you must not conduct any independent research about this case, the matters in the case, the legal issues in the case, or the individuals or other entities involved in the case. This is important for the same reasons that jurors have long been instructed to limit their exposure to traditional forms of media information such as television and newspapers. You also must not communicate with anyone, in any way, about this case. And you must ignore any information about the case that you might see while browsing the internet or your social media feeds.

**At the Beginning of Each Day of the Case:**

As I reminded you yesterday and continue to emphasize to you today, it is important that you decide this case based solely on the evidence and the law presented here. So you must not learn any additional information about the case from sources outside the courtroom. To ensure fairness to all parties in this trial, I will now ask each of you whether you have learned about or shared any information about this case outside of this courtroom, even if it was accidental.

1

## __Jury Instruction Number 35__

2

## **2.2 STIPULATIONS OF FACT**

3          The parties have agreed to certain facts that will be read to you. You must

4   therefore treat these facts as having been proved.

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## Jury Instruction Number 36
## 2.4 DEPOSITION IN LIEU OF LIVE TESTIMONY

A deposition is the sworn testimony of a witness taken before trial. The witness is placed under oath to tell the truth and lawyers for each party may ask questions. The questions and answers are recorded. When a person is unavailable to testify at trial, the deposition of that person may be used at the trial.

Insofar as possible, you should consider deposition testimony, presented to you in court in lieu of live testimony, in the same way as if the witness had been present to testify.

Do not place any significance on the behavior or tone of voice of any person reading the questions or answers.

*Plaintiff's Statement in Support of Instruction*

It is unclear what objection Defendant could have to the use of this jury instruction, as it correctly instructs the jury in how to consider deposition testimony in lieu of live witnesses.

## Jury Instruction Number 37
### 2.11 USE OF INTERROGATORIES

Evidence will now be presented to you in the form of answers of one of the parties to written interrogatories submitted by the other side. These answers were given in writing and under oath before the trial in response to questions that were submitted under established court procedures. You should consider the answers, insofar as possible, in the same way as if they were made from the witness stand.

### <u>Jury Instruction Number 38</u>
### 2.12 USE OF REQUESTS FOR ADMISSION

Evidence will now be presented to you in the form of admissions to the truth of certain facts. These admissions were given in writing before the trial, in response to requests that were submitted under established court procedures. You must treat these facts as having been proved.

**<u>Jury Instruction Number 39</u>**

**2.13 EXPERT OPINION**

You have heard testimony from experts who testified to opinions and the reasons for their opinions. This opinion testimony is allowed, because of the education or experience of this witness.

Such opinion testimony should be judged like any other testimony. You may accept it or reject it, and give it as much weight as you think it deserves, considering the witness' education and experience, the reasons given for the opinion, and all the other evidence in the case.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

<u>**Jury Instruction Number 40**</u>

**2.14 CHARTS AND SUMMARIES NOT RECEIVED IN EVIDENCE**

Certain charts and summaries not admitted into evidence may be shown to you in order to help explain the contents of books, records, documents, or other evidence in the case. Charts and summaries are only as good as the underlying evidence that supports them. You should, therefore, give them only such weight as you think the underlying evidence deserves.

## Jury Instruction Number 41

## 2.15 CHARTS AND SUMMARIES RECEIVED IN EVIDENCE

Certain charts and summaries may be admitted into evidence to illustrate information brought out in the trial. Charts and summaries are only as good as the testimony or other admitted evidence that supports them. You should, therefore, give them only such weight as you think the underlying evidence deserves.

**Jury Instruction Number 42**

**3.1 DUTY TO DELIBERATE**

Before you begin your deliberations, elect one member of the jury as your presiding juror. The presiding juror will preside over the deliberations and serve as the spokesperson for the jury in court.

You shall diligently strive to reach agreement with all of the other jurors if you can do so. Your verdict must be unanimous.

Each of you must decide the case for yourself, but you should do so only after you have considered all of the evidence, discussed it fully with the other jurors, and listened to their views.

It is important that you attempt to reach a unanimous verdict but, of course, only if each of you can do so after having made your own conscientious decision. Do not be unwilling to change your opinion if the discussion persuades you that you should. But do not come to a decision simply because other jurors think it is right, or change an honest belief about the weight and effect of the evidence simply to reach a verdict.

# Jury Instruction Number 43

3.2 Consideration of Evidence—Conduct of the Jury

Because you must base your verdict only on the evidence received in the case and on these instructions, I remind you that you must not be exposed to any other information about the case or to the issues it involves.  Except for discussing the case with your fellow jurors during your deliberations:

Do not communicate with anyone in any way and do not let anyone else communicate with you in any way about the merits of the case or anything to do with it.  This includes discussing the case in person, in writing, by phone, tablet, computer, or any other means, via email, via text messaging, or any internet chat room, blog, website or application, including but not limited to Facebook, YouTube, Twitter, Instagram, LinkedIn, Snapchat, TikTok, or any other forms of social media.  This applies to communicating with your family members, your employer, the media or press, and the people involved in the trial.  If you are asked or approached in any way about your jury service or anything about this case, you must respond that you have been ordered not to discuss the matter and to report the contact to the court.

Do not read, watch, or listen to any news or media accounts or commentary about the case or anything to do with it[, although I have no information that there will be news reports about this case]; do not do any research, such as consulting dictionaries, searching the Internet, or using other reference materials; and do not make any investigation or in any other way try to learn about the case on your own. Do not visit or view any place discussed in this case, and do

not use Internet programs or other devices to search for or view any place discussed during the trial.  Also, do not do any research about this case, the law, or the people involved—including the parties, the witnesses, or the lawyers—until you have been excused as jurors. If you happen to read or hear anything touching on this case in the media, turn away and report it to me as soon as possible.

These rules protect each party's right to have this case decided only on evidence hat has been presented here in court.  Witnesses here in court take an oath to tell the truth, and the accuracy of their testimony is tested through the trial process.  If you do any research or investigation outside the courtroom, or gain any information through improper communications, then your verdict may be influenced by inaccurate, incomplete, or misleading information that has not been tested by the trial process.  Each of the parties is entitled to a fair trial by an impartial jury, and if you decide the case based on information not presented in court, you will have denied the parties a fair trial.  Remember, you have taken an oath to follow the rules, and it is very important that you follow these rules.

A juror who violates these restrictions jeopardizes the fairness of these proceedings.  If any juror is exposed to any outside information, please notify the court immediately.

## Jury Instruction Number 44
### 3.3 COMMUNICATION WITH COURT

If it becomes necessary during your deliberations to communicate with me, you may send a note through the bailiff, signed by any one or more of you. No member of the jury should ever attempt to communicate with me except by a signed writing. I will not communicate with any member of the jury on anything concerning the case except in writing or here in open court. If you send out a question, I will consult with the lawyers before answering it, which may take some time. You may continue your deliberations while waiting for the answer to any question. Remember that you are not to tell anyone—including the court—how the jury stands, whether in terms of vote count or otherwise, until after you have reached a unanimous verdict or have been discharged.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## <u>Jury Instruction Number 45</u>
### 3.4 READBACK OR PLAYBACK

Because a request has been made for a readback of the testimony of any witness, it is being provided to you, but you are cautioned that all readbacks run the risk of distorting the trial because of overemphasis of one portion of the testimony. Therefore, you will be required to hear all the witness' testimony on direct and cross-examination, to avoid the risk that you might miss a portion bearing on your judgment of what testimony to accept as credible. Because of the length of the testimony of this witness, excerpts will be read. The readback could contain errors. The readback cannot reflect matters of demeanor, tone of voice, and other aspects of the live testimony. Your recollection and understanding of the testimony controls. Finally, in your exercise of judgment, the testimony read cannot be considered in isolation, but must be considered in the context of all the evidence presented.

**<u>Jury Instruction Number 46</u>**

**3.5 RETURN OF VERDICT**

A verdict form has been prepared for you. After you have reached unanimous agreement on a verdict, your presiding juror should complete the verdict form according to your deliberations, sign and date it, and advise the bailiff that you are ready to return to the courtroom.

### Jury Instruction Number 47

### 3.9 Post-Discharge Instruction

Now that the case has been concluded, some of you may have questions about the confidentiality of the proceedings. Now that the case is over, you are free to discuss it with any person you choose. By the same token, however, I would advise you that you are under no obligation whatsoever to discuss this case with any person.

If you do decide to discuss the case with anyone, I would suggest you treat it with a degree of solemnity in that whatever you do decide to say, you would be willing to say in the presence of the other jurors or under oath here in open court in the presence of all the parties.

Finally, always bear in mind that if you do decide to discuss this case, the other jurors fully and freely stated their opinions with the understanding they were being expressed in confidence. Please respect the privacy of the views of the other jurors.

Finally, if you would prefer not to discuss the case with anyone, but are feeling undue pressure to do so, please feel free to contact the courtroom deputy, who will notify me, and I will assist.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## <u>Jury Instruction Number 48</u>

**4.1 CORPORATIONS AND PARTNERSHIPS- FAIR TREATMENT**

All parties are equal before the law and a corporation is entitled to the same fair and conscientious consideration by you as any party.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## SPECIAL JURY INSTRUCTIONS

[*Plaintiff's Proposal*]
### Jury Instruction Number 49

**Dealership Is Authorized Repair Agent**

The Song-Beverly Act treats Defendant and its authorized repair facilities in this state as a single entity for purposes of repair visits under warranty.

*Plaintiff's Statement in Support of Instruction*

"Those provisions treat the manufacturer and its 'representative[s] in this state' (the term used in subdivision (d)) or 'agents' (the term used in subdivision (e)) as a single entity, the repair efforts of both being aggregated for the purpose of calculating whether 'the same nonconformity has been subject to repair....'" *Ibrahim v. FCA US, LLC,* 214 Cal.App.3d 878, 889 (1989).

*Defendant's Statement in Opposition to Instruction*

This specially-prepared proposed instruction should not be given because it is both redundant and potentially confusing.

The proposed instruction is redundant insofar as CACI 3201 clearly addresses the fact that FCA may be held liable as a result of Plaintiffs' delivery of the Subject Vehicle to, and repair attempts by, FCA's authorized repair facilities. Specifically, CACI 3201 plainly provides that, to establish that FCA is liable for an alleged failure to repurchase or replace her vehicle, Plaintiffs must prove, among other things, that she delivered the Subject Vehicle to FCA "or its authorized repair facilities" for repair and that FCA "or its representative" failed to repair the Subject Vehicle. Similarly, CACI 3202 is clear that each time the Subject Vehicle is delivered to FCA "or its authorized repair facility" counts as a "repair opportunity." In light of this language, there is no need to reiterate or to emphasize that liability to FCA may result, in part, based upon what its authorized repair facilities did or did not do when the Subject Vehicle was delivered to them for repair.

Moreover, emphasizing the fact that FCA may be held liable based, in part, upon Plaintiffs' delivery of the Subject Vehicle to, and repair attempts by, FCA's authorized repair facilities may mislead the jury into believing that FCA's authorized repair facilities are its agents for all purposes. That is not the law. To the contrary, as a number of courts have held – including in the context of the Song-Berely Consumer Warranty Act – automobile manufacturer and the dealerships that sell and service their vehicles are independent businesses. *See*, *e.g.*, *Martha Ochoa v. Ford Motor Co.*, 89 Cal. App. 5th 1324, 1343 (2023) ("Generally, retailers are not considered the agents of the manufacturers whose products they sell.") (discussing the Song-Berely Act) (internal quotations omitted); *Williams v. Yamaha Motor Corp., U.S.A.*, 2015 WL 13626022 at *6 (C.D. Cal. Jan. 7, 2015) ("The relationship between automobile manufacturers and their dealers has been examined by a host of

courts throughout the country, all of which have agreed that dealers are not 'agents' of manufacturers" [citations omitted]); *Friedman v. Mercedes Benz USA LLC*, 2013 WL 8336127 at *6 (C.D. Cal. June 12, 2013) ("Plaintiff has alleged no facts that MBUSA has any relationship with Keyes whatsoever[,] that MBUSA authorizes dealerships, or that Keyes in any respect serves as MBUSA's agent. MBUSA, notably, is a distributor, not a manufacturer."); *Keegan v. Am. Honda Motor Co.* 838 F.Supp.2d 929, 953 (C.D. Cal. 2012) (allegations that Honda's dealers "are its agents for vehicle repairs," and that Plaintiffs contacted "Honda and/or its authorized agents for vehicle repairs" were insufficient to establish a relationship between Honda and its dealers.)

Furthermore, the statutory language of Song-Beverly clearly distinguishes vehicle manufacturers (like FCA) from the dealerships authorized to perform repairs. *Compare* Cal. Civ. Code § 1791(j) (defining "manufacturer" as "any individual, partnership, corporation, association, or other legal relationship that manufactures, assembles, or producers consumers goods") *with* § 1791(l) (defining "retail seller" as "any individual, partnership, corporation, association, or other legal relationship that engages in the business of selling or leasing consumer goods to retail buyers"). Consistent with this distinction, the California Court of Appeal has described "dealers and manufacturers" as "two distinct groups." *American Motors Sales Corp. v. New Motor Vehicle Bd.* (1977) 69 Cal. App. 3d 983, 987. To allow for instruction that does not acknowledge this distinction would not only confuse the jurors, but also directly contradict the statutory distinction between the manufacturer and retail sellers.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

[*Plaintiff's Proposal*]
**Jury Instruction Number 50**

**Inference of Warrantable Defect**


When Defendant or its authorized repair facility attempts to repair a problem under the warranty, you may conclude that the problem is covered by the warranty.

*Plaintiff's Statement in Support of Instruction*

"Defendants' performance of all repairs and attempted repairs under the warranty provisions constitutes an admission that all the conditions testified to, during the relevant period, came within Defendants' warranties and that the failure to repair or bring the conditions into conformity constitutes a breach of those warranties." Milicevic v. Mercedes-Benz USA, LLC, 256 F.Supp.2d 1168, 1179 (D. Nev. 2003) (finding 7).

"By attempting to repair [these problems] under warranty, [Defendant] admitted the defective nature of these conditions." Milicevic v. Fletcher Jones Imports, Ltd., 402 F.3d 912, 919 (2005).

The rule is the same under California's Song-Beverly Consumer Warranty Act. Jensen v. BMW of N. Am., Inc., 35 Cal.App.4th 112, 137 (1995). ("As we noted, each repair order was stamped with the word, 'Warranty.' If the car was covered by BMW's express warranty for purposes of repair, a jury could infer it was covered by the express warranty for purposes of refund or replacement.")

"[The manufacturer]'s evidence that repair efforts eliminated the brake shimmy for a period of time does not lead necessarily to a conclusion the shimmy was fixed each time and recurred because of [the Plaintiff]'s driving habits. On this record, the jury could reasonably infer [the dealership]'s replacement of the rotors, pads, and other brake parts provided temporary relief from the shimmy but never resolved a fundamental defect in the braking system." Jensen v. BMW of N. Am., Inc., 35 Cal.App.4th 112, 135 (1995).

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

*Defendant's Statement in Opposition to Instruction*

This specially prepared instruction should not be given because it is redundant of the standard CACI, omits essential elements, is argumentative, and risks confusing the jury. CACI 3201 already explains that a manufacturer may be liable only if, after a reasonable number of opportunities, it fails to repair a warrantable defect and then fails to act promptly to repurchase or replace; CACI 3202 tells the jury how to decide whether opportunities were reasonable. The proposal strips away required predicates by untethering any repurchase/replace duty from findings that the condition was covered by warranty and substantially impaired use, value, or safety. See Civ. Code, § 1793.2(d); CACI 3201, 3203, 3204. It also reads like closing argument by repeatedly emphasizing an "affirmative" duty and suggesting an automatic obligation whenever repairs are unsuccessful, rather than leaving the fact-intensive issues of reasonable opportunities and promptness to the jury. While Plaintiffs cite cases recognizing the duty does not legally depend on a consumer request, the law evaluates compliance and promptness contextually and an offer to repurchase or replace can satisfy the obligation when made promptly under the circumstances. *See Lukather v. General Motors LLC* (2010) 181 Cal.App.4th 1041, 1050; *Dominguez v. American Suzuki Motor Corp.* (2008) 160 Cal.App.4th 53, 59. To the extent the proposal imports language from the lemon-law presumption, it risks conflating standards applicable only to new motor vehicles under Civ. Code, § 1793.22. If the Court nevertheless considers a supplemental instruction, it should be neutral, cross-reference CACI 3201/3202/3203/3204, and clarify that any duty to repurchase/replace arises only after the jury finds a warrantable defect that substantially impairs use, value, or safety and a failure to repair after a reasonable number of opportunities, with promptness determined under all the circumstances.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

*[Plaintiff's Proposal]*
**Jury Instruction Number 51**

**Affirmative Duty of Defendant**


Defendant is allowed a reasonable number of opportunities to repair a car under warranty. It is obligated to promptly repurchase or replace a car that it does not repair under warranty within a reasonable number of opportunities. That obligation is affirmative and does not require a customer to request repurchase or replacement.

1

2    *Plaintiff's Statement in Support of Instruction*

3        It is black letter law that Defendant has an <u>affirmative duty</u> to promptly

4    provide restitution when it fails to conform a car to warranty after a reasonable

5    number of opportunities. That obligation arises affirmatively on the date that it fails

6    to do so and <u>does not depend on a consumer's request</u>. See: Cal. Civ. Code

7    1793.2(d); *Santana v. FCA US, LLC*, 56 Cal. App. 5th 334, 347-48 (2020) ("A

8    manufacturer's duty to repurchase a vehicle **does not depend on a consumer's**

9    **request**, but instead arises **as soon as** the manufacturer fails to comply with the

10   warranty within a reasonable time."- emphasis added); *Krotin v. Porsche Cars N.*

11   *Am., Inc.*, 38 Cal. App. 4th 294, 302 (1995) ("the Act creates an affirmative duty

12   upon the manufacturer or its representative to provide restitution or replacement");

13   *Lukather v. General Motors LLC*, 181 Cal. App. 4th 1041, 1049 (2010); *Kirzhner v.*

14   *Mercedes-Benz USA, LLC*, 9 Cal. 5th 966, 971 (2020) ("manufacturer's affirmative

15   obligation to "promptly" repurchase or replace a defective vehicle it is unable to

16   repair").

17

18

19

20

21

22

23

24

25

26

27

28

*Defendant's Statement in Opposition to Instruction*

This specially-prepared proposed instruction should not be given because it is redundant, but yet fails to include a critical element of Plaintiffs' claim.

The proposed instruction is redundant because each portion of it is clearly and adequately covered by CACI 3201. Specifically, CACI 3201 explains that Plaintiffs claims that FCA failed to promptly repurchase or replace her vehicle and that FCA may be held liable for that alleged failure if Plaintiffs proves, among other things, that FCA or its authorized repair facilities failed to repair a warranted defect after a reasonable number of opportunities to do so and that FCA thereafter failed promptly to replace or to repurchase the vehicle. Nothing in CACI 3201 states or suggests that Plaintiffs needed to do anything more than that, including requesting a repurchase or replacement. Therefore, this specially-prepared proposed instruction is unnecessary.

Moreover, the proposed instruction is incomplete – and, therefore, misstates the law – insofar as it does not remind the jury that an essential element of Plaintiffs' claim is that she prove that the defect in question was not only covered by the applicable warranty, but that it also substantially impaired the use, value, or safety of the Subject Vehicle. Without that information, the proposed instruction misleadingly suggests that FCA's potential obligation to repurchase or to replace the Subject Vehicle could be trigger by any issue with the Subject Vehicle, regardless of how minor it was.

If, however, the Court is nevertheless inclined to give this instruction, it should add the following statement to the end of the instruction: "While the law does not require Plaintiffs to take any affirmative steps to secure relief, other than to permit FCA a reasonable opportunity to repair her vehicle, as a practical matter, a consumer usually must request a repurchase or replacement." *See Lukather v. General Motors, LLC*, 181 Cal. App. 4th 1041, 1050 (2010) ("[T]he Act does not

require consumers to take any affirmative steps to secure relief for the failure of a manufacturer to service or repair a vehicle to conform to applicable warranties other than, of course, permitting the manufacturer a reasonable opportunity to repair the vehicle…. In reality, … , the manufacturer seldom on its own initiative offers the consumer the options available under the Act: a replacement vehicle or restitution. Therefore, as a practical matter, the consumer will likely request replacement or restitution.").

*[Plaintiff's Proposal]*
**Jury Instruction Number 52**

**No Further Visits Necessary**


Once a consumer provides a reasonable number of repair opportunities for their car under warranty, the consumer is under no obligation to make more visits, or to allow more diagnosis or repairs, to be entitled to repurchase or replacement of their car.

_Plaintiff's Statement in Support of Instruction_

"Fleetwood next argues that because certain repairs were performed at the time of the October 2003 repair visit, it was entitled to complete _all_ repairs… we reject as unsupported the proposition offered by Fleetwood that repair of one aspect of a nonconforming condition automatically entitles the manufacturer, as a matter of law, to complete all repairs. Quite to the contrary, as the facts of the instant case illustrate, a breach of obligations arising under the Song–Beverly Act may arise under many diverse situations. Suffice it to say that the critical question of whether a reasonable number of attempts were provided, _**thereby allowing the consumer to forego further repair attempts**_ and pursue a "replace-or-repurchase" remedy, depends upon the facts and circumstances of each case." _Robertson v. Fleetwood Travel Trailers of California, Inc._, 144 Cal. App. 4th 785, 802-803 (2006) (emphasis added).

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

*Defendant's Statement in Opposition to Instruction*

This specially-prepared proposed instruction should not be given because it is unnecessary and potentially confusing.

It is unnecessary to emphasize to the jury that Plaintiffs need only afford FCA or its authorized repair facilities a reasonable number of repair opportunities because that point is clearly expressed by both CACI 3201 (stating that FCA may be held liable if Plaintiffs establishes, among other things, that FCA or its authorized repair facility failed to repair the Subject Vehicle after a reasonable number of opportunities) and 3202 (explaining what the jury should consider to determine whether FCA and its authorized repair facilities were afforded a reasonable number of opportunities to repair the Subject Vehicle), and neither of those instructions states or suggests that Plaintiffs must offer FCA or its authorized repair facilities more than a reasonable number of repair opportunities in order for FCA to be held liable.

However, the phrasing of this proposed instruction is potentially confusing insofar as it implies that Plaintiffs may determine whether a reasonable number of repair opportunities has been afforded and may thereafter refuse to deliver the Subject Vehicle to FCA and its authorized repair facilities. That is not the case. As is clear from CACI 3202, it is for the jury to determine whether FCA had a reasonable number of repair opportunities to repair the Subject Vehicle. The fatal flaw with this instruction is the implication that the Plaintiffs can determine subjectively whether the repair attempts afforded the manufacturer were reasonable. This would potentially open the door for argument that one repair presentation is determined to be sufficient opportunity to repair, which would be contrary to controlling case law. The Song-Beverly Act was "designed to give recourse to the buyer of a new automobile that suffers from the same defect **repeatedly.**" *Krieger v. Nick Alexander Imports*, (1991) 234 Cal.App.3d 205, 213

(emphasis added). A single presentation for repairs does not, as a matter of law, support a breach of warranty claim: "'Attempts' is plural. The statute does not require the manufacturer to make restitution or replace a vehicle if it has had only one opportunity to repair that vehicle." *Silvio v. Ford Motor Co.* (2003) 109 Cal.App.4th 1205, 1208. As a result, allowing for an instruction that implies that Plaintiffs could make the subjective decision as to whether ample opportunity has been provided to repair the vehicle directly runs afoul of existing law.

Moreover, the proposed instruction misleadingly suggests that Plaintiffs' continued use of the Subject Vehicle is irrelevant. However, as explained in FCA's specially-prepared proposed instructions, Plaintiffs' continued use of the Subject Vehicle is relevant to both the issue of whether the vehicle was substantially impaired (*see* CACI 3230 Directions for Use [citing CACI 3204]) and the amount of the damages potentially recoverable by Plaintiffs if she proves her claim for breach of warranty (*see* CACI 3230 Directions for Use [quoting *Ibrahim v. Ford Motor Co.*, 214 Cal. App. 3d 878, 898 (1989) {"Nothing in the language of either the Uniform Commercial Code or the Song-Beverly Act suggests that abrogation of the common law principles relating to continued use and waiver of a buyer's right to rescind was intended. … The legal principles governing continued use quoted previously are thus still applicable, as are the rules regulating the equitable right of setoff."}]).

[*Plaintiff's Proposal*]

**Jury Instruction Number 53**

**Use of Available Information**


Defendant must make use of reasonably available information, including both its dealerships' records and its own records, to comply with its obligations under the Song Beverly Act. Failure to do so can be willful conduct.

*Plaintiff's Statement in Support of Instruction*

"A decision made without the use of reasonably available information germane to that decision is not a reasonable, good faith decision." *Kwan v. Mercedes-Benz of N. Am., Inc.*, 23 Cal. App. 4th 174, 186 (1994); *Lukather v. Gen. Motors, LLC*, 181 Cal. App. 4th 1041, 1051 (2010) (same).

An automobile manufacturer need not read minds to determine which vehicles are defective; it need only read its dealers' service records. The Act requires the manufacturer to maintain or to designate and authorize service and repair facilities in the state (Civ.Code, § 1793.2, subd. (a)(1)(A)); i.e., usually, automobile dealerships with service departments. As indicated by the facts in the present case, where a district service manager from Porsche ultimately obtained copies of service records from various dealerships to prepare, as she termed it, "a lemon law summary analysis," a manufacturer is capable of becoming aware of every failed repair attempt. Computerized recordkeeping at dealership service departments could easily facilitate this task, **even without any direct contact from the consumer to the manufacturer** or any request for replacement or reimbursement to the dealership. It is thus apparent that a manufacturer need not be "clairvoyant"; it need only demonstrate more initiative in honoring warranties. *Krotin v. Porsche Cars N. Am., Inc.*, 38 Cal. App. 4th 294, 303, 45 (1995), *as modified on denial of reh'g* (Sept. 14, 1995) – emphasis added.

"Here there was sufficient evidence to support the trial court's willfulness finding. Lukather's testimony and GM's telephone logs permitted the trial court to make the following reasonable inferences: GM knew **or reasonably should have known from information available from the dealer** on March 8, 2007, that the Cadillac was a "lemon" and Lukather had selected the restitution option. Nevertheless, for the next two months GM did not act in good faith to provide Lukather with the restitution remedy; rather, GM actively

discouraged Lukather from pursuing this remedy by telling him that the Cadillac was repaired and he should pick it up, that he should select another car at the dealer, that he would not get all of his money back, and that it would take several months for GM to act on his request for restitution. GM fails to persuade us that the evidence is insufficient to support the finding that its violation was willful so as to trigger the imposition of a civil penalty." *Lukather v. Gen. Motors, LLC*, 181 Cal. App. 4th 1041, 1051–52, (2010) (emphasis added).

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

*Defendant's Statement in Opposition to Instruction*

This specially-prepared proposed instruction should not be given because it is misleadingly conflates two different concepts under the Song-Beverly Consumer Warranty Act and because it unduly emphasizes one potential consideration regarding "willfulness."

As applicable to this case, what FCA must do to comply with its lemon law obligations is clearly set forth in CACI 3201. Neither the Song-Beverly Act nor the law as set forth in that CACI instruction necessarily obligates FCA to "make use of reasonably available information" in order to avoid liability. Rather, FCA must promptly repurchase or replace a vehicle that is substantially impaired by a warrantable defect if it is unable to repair that vehicle after a reasonable number of opportunities to do so.

While an alleged failure to make use of reasonably available information could potentially be a consideration with respect to the question of "willfulness," such an alleged failure would not necessarily always be relevant to that issue. As explained in CACI 3244, "willfulness" involves the intentional declination to follow known legal obligations, as opposed to a good faith belief that those legal obligations were being fulfilled. Thus, the key questions surrounding the issue of "willfulness" are the manufacturer's intent and good faith. The use – or not – of reasonably available information does not necessarily always weigh in favor of one side or the other of the "willfulness" question. The use of reasonably available information could still result in an intentional decision not to follow known statutory obligations, just as the failure to use reasonably available information could be done in good faith. Therefore, it would be misleading to give an instruction suggesting that the failure to use reasonably available information is always indicative of "willful" conduct, and it would unduly emphasize only one potential consideration regarding the "willfulness" issue. FCA has submitted a specially-prepared proposed

instruction to give the jury further guidance regarding the considerations that should go into determining "willfulness," if necessary.

[*Plaintiff's Proposal*]

## Jury Instruction Number 54

### Obstructive Policies

Willful conduct can include internal policies or obstacles that impede Defendant's compliance with its lemon law obligations.

*Plaintiff's Statement in Support of Instruction*

"[T]he jury could conclude that Isuzu's policy, which requires a part be replaced or adjusted before Isuzu deems it a repair attempt but excludes from repair attempts any visit during which a mechanic searches for but is unable to locate the source of the problem (see fn. 11, *ante*), is unreasonable and not a good faith effort to honor its statutory obligations to repurchase defective cars. (Cf. *Kwan v. Mercedes-Benz of North America, Inc., supra,* 23 Cal.App.4th at p. 185 ["manufacturers [cannot] escape the penalty by deliberately remaining ignorant of the facts"].) Finally, there was evidence that Isuzu adopted internal policies that erected hidden obstacles to the ability of an unwary consumer to obtain redress under the Act.[13] This latter evidence would permit a jury to infer that Isuzu impedes and resists efforts by a consumer to force Isuzu to repurchase a defective car, regardless of the presence of an unrepairable defect, and that Isuzu's decision to reject Oregel's demand was made pursuant to Isuzu's policies rather than to its good faith and reasonable belief the car did not have an unrepairable defect covered by the warranty or that a reasonable number of attempts to effect a repair had not yet occurred." *Oregel v. Am. Isuzu Motors, Inc.*, 90 Cal. App. 4th 1094, 1105 (2001); see also: Cal. Civ. Code 1794(c).

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

*Defendant's Statement in Opposition to Instruction*

This specially-prepared proposed instruction should not be given because it is misstates the law and because FCA has submitted a specially-prepared proposed instruction that better explains that potential relevance of a manufacturer's policies to the question of "willfulness."

Plaintiffs' proposed instruction misleadingly suggests that "internal policies or obstacles that impede" compliance with the Song-Beverly Consumer Warranty Act always suggest "willfulness." However, that is not the relevant inquiry, nor is it always the case. While the existence of policies and other internal processes that impede statutory compliance could potentially be a consideration with respect to the question of "willfulness," it just as easily could not. As explained in CACI 3244, "willfulness" involves the intentional declination to follow known legal obligations, as opposed to a good faith belief that those legal obligations were being fulfilled. Thus, the key questions surrounding the issue of "willfulness" are the manufacturer's intent and good faith. The existence – or not – of policies and procedures that impede compliance with the Song-Beverly Act does not necessarily always weigh in favor of one side or the other of the "willfulness" question. The absence of allegedly obstructionist policies and procedures could nevertheless result in an intentional decision not to follow known statutory obligations, just as policies and procedures that actually impede with compliance with statutory obligations could have been put in place in good faith. Therefore, it would be misleading to give an instruction suggesting that the existence of allegedly obstructionist policies and procedures is always indicative of "willful" conduct, and it would unduly emphasize only one potential consideration regarding the "willfulness" issue.

The specially-prepared instruction proposed by FCA would more clearly and accurately inform the jury that the existence of a written policy on the requirement to repair or replace is among the factors (others of which are also listed) that the jury

may consider to determine whether FCA acted in good faith. *See* CACI 3244 Sources and Authority (quoting *Lukather v. American Honda Motor Co., Inc., LLC*, 181 Cal. App. 4th 1041, 1051 (2010) [noting "the general policy against imposing forfeitures or penalties against parties for their good faith, reasonable actions"] and *Kwan v. Mercedes Benz of N. Am.*, 23 Cal. App. 4th 174, 185 (1994) ["[T]he penalty under section 1794(c), like other civil penalties, is imposed as punishment or deterrence of the defendant, rather than to compensate the plaintiff. In this, it is akin to punitive damages. Neither punishment nor deterrence is ordinarily called for if the defendant's actions proceeded from an honest mistake or a sincere and reasonable difference of factual evaluation. … This might be the case, for example, if the manufacturer reasonably believed the product *did* conform to the warranty, or a reasonable number of repair attempts had not been made, or the buyer desired further repair rather than replacement or refund."]); *Jensen v. BMW of N. Am., Inc.*, 35 Cal. App. 4th 112, 136 (1995) ("Among the factors to be considered by the jury are whether: (1) the manufacturer knew the vehicle had not been repaired within a reasonable period or after a reasonable number of attempts, and (2) whether the manufacturer had a written policy on the requirement to repair or replace".); *Rupay v. Volkswagen Grp. of Am., Inc.*, 2012 WL 10634428, at *7 (C.D. Cal. Nov. 15, 2012) ("Given the Replacement and Repurchase Offers, it is hard to imagine how Plaintiffs could possibly characterize [a manufacturer's] actions as a 'willful' breach of its obligations under the Song–Beverly Act to offer either a replacement or repurchase."; granting manufacturer's motion for summary adjudication as to the unavailability of civil penalties); *Hatami v. Kia Motors Am., Inc.*, 2009 WL 1396358, at *3 (C.D. Cal. April 20, 2009) ("[T]he Court finds willful conduct absent as Defendants initial response to Plaintiffs' request and subsequent buy back offers do not evidence an intent to avoid fulfilling its duty under the Song–Beverly Act.";

1  granting summary adjudication in favor of the manufacturer on a Plaintiffs' claim
2  for civil penalties).
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

1

*[Plaintiff's Proposal]*

2

## **Jury Instruction Number 55**

3

**Promptness**

4

5

     **Repurchase or replacement under the Song Beverly Act must be**

6

**'prompt.' If Defendant is obligated to repurchase or replace a car under the**

7

**Act, then delay of more than thirty days to do so may be found to be not prompt.**

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

<u>*Plaintiff's Statement in Support of Instruction*</u>

"(2)  If the manufacturer or its representative in this state is unable to service or repair a new motor vehicle, as that term is defined in paragraph (2) of subdivision (e) of Section 1793.22 , to conform to the applicable express warranties after a reasonable number of attempts, the manufacturer shall either **promptly** replace the new motor vehicle in accordance with subparagraph (A) or **promptly** make restitution to the buyer in accordance with subparagraph (B).   However, the buyer shall be free to elect restitution in lieu of replacement, and in no event shall the buyer be required by the manufacturer to accept a replacement vehicle." Cal. Civ. Code 1793.2(d)(2) (emphasis added).

"And the evidence supports the implied finding that **GM had ample time in the period between March 8 and April 12, 2007, in order to comply with the Act**. No evidence supports GM's assertion that in this case the matter of restitution was a labor-intensive process that required months to accomplish. In its May 23, 2007 letter, GM offered Lukather restitution and asked Lukather for further information which GM claimed was required in order to calculate the amount of such offer. Even without any response from Lukather to GM's May 23, 2007 letter, it took GM two days—until May 25, 2007—to obtain the appropriate information on its own, to calculate an amount of restitution, and to send Lukather a letter with its offer. Accordingly, once GM decided to make an offer of restitution, it took GM two days to determine the amount it needed to do so. **The record thus belies GM's assertion that the process of restitution is labor intensive and requires months to accomplish**." *Lukather v. Gen. Motors, LLC*, 181 Cal. App. 4th 1041, 1049 (2010) (emphasis added).

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

*Defendant's Statement in Opposition to Instruction*

This specially-prepared proposed instruction should not be given because it misleadingly suggests that a failure to repurchase or replace within 30 days is never "prompt" for purposes of the Song-Beverly Consumer Warranty Act.

First, the quoted excerpt from *Lukather* does not stand for the proposition stated in the proposed instruction.

Second, it is implicit from both *Lukather* and CACI 3201 that the determination of whether a manufacturer has acted promptly to repurchase or to replace a vehicle is a fact-intensive issue to be decided by the jury.

Third, as noted by one of the authorities cited in support of the specially-prepared instruction proposed by FCA, a manufacturer could just as easily be found to have acted promptly, even if there is a lengthy delay between a consumer's repurchase request and the manufacturer's repurchase offer. *See Dominguez v. Am. Suzuki Motor Corp.*, 160 Cal. App. 4th 53, 59 (2008) (reversing a denial of summary judgment in favor of a manufacturer on a plaintiff's claims under the Song-Beverly Consumer Warranty Act where manufacturer offered to repurchase a motorcycle approximately six weeks after plaintiff's counsel demanded repurchase or replacement).

Finally, as stated in the specially-prepared instruction proposed by FCA and the authorities cited in support thereof, a manufacturer satisfies its obligation to repurchase or to replace a defective vehicle under the Song-Beverly Act by making an offer to repurchase or to replace; it need not necessarily complete the repurchase or replacement. *See Dominguez*, 160 Cal. App. 4th at 59 (reversing a denial of summary judgment in favor of a manufacturer on a plaintiff's claims under the Song-Beverly Consumer Warranty Act where manufacturer offered to repurchase a motorcycle approximately six weeks after plaintiff's counsel demanded repurchase or replacement); *Herrera v. Ford Motor Co.*, 2022 WL 562267, at *3-5 (C.D. Cal.

Feb. 24, 2022) (granting summary judgment in manufacturer's favor as to plaintiff's express warranty claims on the basis of the manufacturer's offer to repurchase); *Rivera v. Ford Motor Co.*, 2020 WL 1652534, at *7 (C.D. Cal. Feb. 10, 2020) ("The Court finds that the undisputed facts establish that [the manufacturer] made a prompt offer to repurchase or replace Plaintiffs' vehicle, and Plaintiffs rejected [that] offer. The Court concludes that these facts alone entitle [the manufacturer] to summary judgment on Plaintiffs' Song-Beverly Act claims."); *Nunez v. Ford Motor Co.*, 2019 WL 13212422, at *4 (C.D. Cal. Nov. 15, 2019) (concluding that manufacturer was entitled to summary judgment on Song-Beverly Act claims where "the undisputed facts establish[er] that [the manufacturer] made a prompt offer to repurchase or replace Plaintiffs' vehicle, and Plaintiff rejected [that] offer."); *DeLeon v. Ford Motor Co.*, 2019 WL 7195325, at *6 (C.D. Cal. Nov. 13, 2019) ("Defendant complied with the express warranty provision of the Song-Beverly Act when it gave Plaintiff a prompt and complete restitution offer."); *Gonzalez v. Ford Motor Co.*, 2019 WL 6122553, at *5-8 (C.D. Cal. Oct. 23, 2019) (granting summary judgment in favor of a manufacturer on a plaintiff's claims under the Song-Beverly Act on the basis of the manufacturer's offer to replace or repurchase); *Ruiz v. BMW of N. Am., Inc.*, 2018 WL 2106454, at *3 (C.D. Cal. May 7, 2018) ("The buyer does not need to request a repurchase of the vehicle; instead, the manufacturer must promptly offer to repurchase the vehicle where it has been given a reasonable opportunity to repair the defect."); *Rupay v. Volkswagen Grp. of Am., Inc.*, 2012 WL 10634428, at *6 (C.D. Cal. Nov. 15, 2012) (holding that manufacturer's repurchase offer complied with the Song-Beverly Act as a matter of law); *Hatami v. Kia Motors Am., Inc.*, 2009 WL 1396358, at *3 (C.D. Cal. April 20, 2009) (acknowledging that a manufacturer's duty to provide restitution could be satisfied by an offer to make restitution, but declining to enter summary judgment in the manufacturer's favor on the grounds that there was a genuine issue of material fact as to whether the

manufacturer's offer was made "promptly"); *see also Marquez v. Mercedes-Benz USA, LLC*, 751 N.W.2d 869, 863-866 (Wis. Ct. App. 2008) (reversing a summary judgment in favor of a consumer under Wisconsin's lemon law, holding that triable issues of fact existed as to whether the consumer intentionally withheld loan payoff information from the manufacturer and intentionally caused it to miss the law's 30–day refund window).

[*Plaintiff's Proposal*]

## Jury Instruction Number 56

## Justifiable Revocation of Acceptance

**To prove justifiable revocation, Plaintiff must:**

**1) demonstrate that a defect in the vehicle substantially impaired its value to Plaintiff,**

**2) demonstrate Plaintiff accepted the vehicle without discovery of the defect, and**

**3) demonstrate that the revocation occurred within a reasonable time after Plaintiff discovered or should have discovered the defect.**

1

2            *Plaintiff's Statement in Opposition to Instruction*

3

4   <u>Authority:</u> *Ramos v. Mercedes-Benz USA, LLC* (2020) 55 Cal.App.5th 220.

5

6    "The jury's verdict, finding no substantial nonconformity in the car, makes clear
7   it would not have been justifiable for plaintiff to revoke acceptance, and that he had
    no 'right to cancel the sale.' (§ 1794, subd. (b)(1); citing Cal. U. Com. Code, §
8   2608, subd. (1) ['The buyer may revoke his acceptance of a lot or commercial unit
    whose nonconformity substantially impairs its value to him ....'].)"

9   (*Ramos v. Mercedes-Benz USA, LLC* (2020) 55 Cal.App.5th 220, 227.)

10  "Plaintiff contends he revoked acceptance when he asked the manufacturer to buy
11  back the car, and again when he filed his complaint. But the statute requires the
    buyer's revocation of acceptance be *justifiable*, and here, the jury's verdict
12  foreclosed a finding that revocation of acceptance would have been justifiable."

13  (*Ramos v. Mercedes-Benz USA, LLC* (2020) 55 Cal.App.5th 220, 227 [emphasis in

14  original].)

15

16

17

18

19

20

21

22

23

24

25

26

27

28

*Defendant's Statement in Opposition to Instruction*

Plaintiff's proposed instruction misstates the law, with respect to both what Plaintiff must prove to establish a breach of the implied warranty of merchantability and what they must prove to establish an effective revocation.

The concept of justifiable revocation comes into play only with respect to Plaintiff's claim for breach of the implied warranty of merchantability. To establish a breach, Plaintiff must prove, among other things, that their vehicle was not of the same quality as those generally acceptable in the trade or not fit for the ordinary purposes for which it was to be used. *See* CACI 3210. Therefore, Plaintiffs' proposed instruction is incorrect insofar as it states that they must prove "a defect in the vehicle substantially impaired its value to Plaintiffs." Moreover, Plaintiffs' proposed instruction is inaccurate insofar as it suggests – by its reference to impairment of the vehicle's value "to Plaintiffs" – that the underlying breach is determined with reference to a subjective standard. By its terms, the determination of whether a vehicle is of the same quality as those generally acceptable in the trade or is fit for the ordinary purposes for which it is to be used is an objective one.

Further, Plaintiff's proposed instruction does not go far enough in explaining what is necessary to establish an effective revocation. In addition to demonstrating that the revocation occurred within a reasonable time after Plaintiff discovered, or should have discovered, the underlying breach, Plaintiff must also establish both that the revocation occurred before any substantial change in the condition of the vehicle which was not caused by the underlying defect and that they notified the seller of the revocation. *See* Cal. Comm. Code § 2608; *Simgel Co., Inc. v. Jaguar Land Rover N. Am., LLC*, 55 Cal. App. 5th 305, 315-316 (2020).

For the foregoing reasons, AHM's Specially Prepared Instruction No. 62 should be given instead of Plaintiff's proposed instruction.

*[Plaintiff's Proposal]*

**Jury Instruction Number 57**

**Damages for Failure to Complete Repairs Within 30 Days or Commence Repairs within a Reasonable Time**

**If you find that the Defendant failed to complete repairs of the vehicle to conform to the applicable express warranty within 30 days or commence repairs within a reasonable time, and that Plaintiff justifiably revoked acceptance of the vehicle, you must determine Plaintiff's damages, calculated as follows: The total amount paid toward the purchase of the vehicle, including down payments, monthly payments, taxes, and fees.**

*Plaintiff's Statement in Support of Instruction*

1
2
3
4
5
6

*Defendant's Statement in Opposition to Instruction*

Plaintiff's proposed instruction confuses and misstates the law in multiple different respects.

First, by combining their discussion in a single proposed instruction, Plaintiff confuses the distinction between an alleged violation of Civil Code section 1793.2(b) – which generally requires a manufacturer to conform a vehicle to its applicable warranties within 30 days – and an alleged violation of the implied warranty of merchantability – which requires timely and effective revocation in order to pursue certain remedies.  *See* Cal. Comm. Code § 2608; *Simgel Co., Inc. v. Jaguar Land Rover N. Am., LLC*, 55 Cal. App. 5th 305, 315-316 (2020).  Indeed, some of the sources cited as authorities for the proposed instruction explain that restitution is an available remedy for a breach of the implied warranty when there has been a timely and effective revocation.  *See Music Acceptance Corp. v. Lofing*, 32 Cal. App. 4th 610, 621 (1995) ("Thus, in the event of a breach of the implied warranty of merchantability, the buyer is entitled to cancel the contract and recover any amounts paid toward the purchase of the goods."); *Seely v. White Motor Co.*, 63 Cal. 2d 9, 14 (1965) ("The damages awarded by the trial court, 'the loss directly and naturally resulting in the ordinary course of events from the breach of warranty,' can properly include lost profits as well as the amount paid on the purchase price.") (citations omitted).

Second, contrary to the implication of the proposed instruction, Civil Code section 1793.2(b) does not state that an established violation of that provision entitles

a consumer to full restitution of the purchase price of the vehicle, nor does it expressly describe any remedy available upon proof of a violation. In contrast, Civil Code section 1793.2(d) expressly states that restitution may be available as a remedy for an established violation of that provision. The fact that restitution is specifically identified as an available remedy for a violation of Section 1793.2(d) but not for Section 1793.2(b) suggests that the Legislature did not intend for restitution to be an available remedy for a violation of Section 1793.2(b).

Third, Plaintiff's selective mis-reading of Civil Code section 1794 supports AHM's interpretation, rather than Plaintiffs'. As Plaintiffs note, Section 1794(a) states: "Any buyer of consumer goods who is damaged by a failure to comply with any obligation under this chapter or under an implied or express warranty or service contract may bring an action for the recovery of damages and other legal and equitable relief." While this provision confirms – not surprisingly – that a consumer may sue for damages resulting from an alleged violation of Civil Code section 1793.2(b), it does not suggest that such damages may include full restitution of the purchase price of the vehicle. Indeed, Section 1794(b) suggests that full restitution is *not* an available for a violation of Section 1793.2(b) because it states that "[t]he measure of the buyer's damages in an action under this section shall include the *rights of replacement or reimbursement as set forth in subdivision (d) of Section 1793.2*…" (emphasis added), which confirms that restitution is available as a possible remedy only for a violation of Section 1793.2(d).

Finally, nothing in *Ramos v. Mercedes-Benz USA, LLC*, 55 Cal. App. 5th 220 (2020) – the primary source cited as authority for the proposed instruction – states or suggests that full restitution of the purchase price of the vehicle is an available remedy for an established violation of Civil Code section 1793.2(b). To the contrary, the very first sentence of that opinion states that, "under the Song-Beverly Consumer Warranty Act … , a buyer may not obtain restitution of the full price he paid for a

new motor vehicle, where the manufacturer failed to complete repairs to a defect within 30 days, but the defect did not substantially impair the vehicle's use, value or safety." *Id.* at 222. The opinion goes on to confirm both that "[t]he statute says nothing about a replacement-restitution remedy for the section 1793.2(b) violation of failing to complete repairs within 30 days" and that "section 1794, subdivision (b) limits the replacement-restitution remedy to the circumstances 'set forth in subdivision (d) of Section 1793.2.'" *Id.* at 225-226 (citing *Gavaldon v. DaimlerChrysler Corp.*, 32 Cal. 4th 1246, 1262 [the Supreme Court rejected a plaintiff's contention "that [section 1794,] subdivision (b) signifies that anyone injured under subdivision (a) may obtain the replacement/restitution remedy"; "the legislative history confirms that the only reasonable reading of section 1794, subdivision (b) is that the replacement/restitution remedy applies only if the conditions of section 1793.2(d) are met"]; *Kirzhner v. Mercedes-Benz USA, LLC*, 9 Cal. 5th 966, 986 (2020) ["The duty to promptly provide restitution arises only after the manufacturer is unable to repair the vehicle after being afforded the opportunity to make a reasonable number of repair attempts."]). This makes clear that, standing alone, an established violation of Section 1793.2(b) is insufficient to warrant the remedy of full restitution.

## DISPUTED CACI JURY INSTRUCTIONS

[Defendant's *Proposal*]
### Jury Instruction Number 58

### Damages on Multiple Legal Theories

KIMBERLY A MATTEI seeks damages from FCA US, LLC under more than one legal theory. However, each item of damages may be awarded only once, regardless of the number of legal theories alleged.

You will be asked to decide whether FCA US, LLC is liable to KIMBERLY A MATTEI under the following legal theories:

1. Alleged failure to promptly replace the vehicle or make restitution after a reasonable number of repair attempts.

2. Alleged failure to complete repairs within 30 days.

3. Alleged failure to provide authorized repair facilities with sufficient service literature and replacement parts.

4. Alleged breach of the Implied Warranty of Merchantability.

5. Fraudulent Concealment.

The following items of damages are recoverable only once under all of the above legal theories:

1. Restitution of the purchase price (less offset for use) or diminution in value

2. Consequential Damages

3. Incidental Damages

4. Civil Penalties (up to two times actual damages).

Source:  CACI 3934

Plaintiff's Opposition to this Instruction:

109

The rights secured under the Song-Beverly Consumer Warranty Act are cumulative. Civ. Code §1790.4.  Whether there is duplication of damages is simply resolved following the verdict by an election of remedies by Plaintiff.

[Defendant's *Proposal*]

### Jury Instruction Number 59

**Affirmative Defense—Statute of Limitations (Cal. U. Com.**

**Code, § 2725)**

FCA US, LLC contends that Plaintiff's lawsuit was not filed within the time set by law. To succeed on this defense, FCA US, LLC must prove that the date of [tender of] delivery occurred before September 12, 2021 or any breach was discovered or should have been discovered before September 12, 2021.

Source: CACI 3222

Plaintiff's Opposition to this Instruction:

The instruction fails to account for various means of tolling the statute of limitations (as raised in Plaintiff's Complaint, such as equitable tolling, discovery rule, etc.)

<u>DEFENDAN'T SPECIAL JURY INSTRUCTIONS</u>

**<u>Jury Instruction No. 60</u>**

**"SUBSTANTIALLY IMPAIRD" FURTHER EXPLAINED**

The term "substantially" injects an element of degree. Not every impairment that affects use, value, or safety is sufficient to trigger an obligation to replace or buy back a vehicle.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

*Defendant's Statement in Support of Instruction*

Sources:  CACI 3204, Sources and Authority (quoting *Lundy v. Ford Motor Corp.*, 87 Cal. App. 4th 472, 478 (2001) ["The term {'substantially'} modifies its object, 'impairment.'   It injects an element of degree; not every impairment is sufficient to satisfy the statute.  …  At the least, the requirement is not satisfied by any impairment, however, insignificant, that affects use, value, or safety."]); *see also Johnson v. Ford Motor Co.*, 35 Cal. 4th 1191, 1211 (2005) ("Even a vehicle with a defect is not necessarily a lemon.  A 'nonconformity' requiring the vehicle's refund or replacement under [California] law must substantially impair[ ] the use, value, or safety of the new motor vehicle.'  Not every customer complaint about a new car, or even every valid customer complaint, rises to that level.  And customers and manufacturers frequently disagree about whether a defect has been repaired or a reasonable number of attempts have been made.").

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

*<u>Plaintiffs' Statement in Opposition to Instruction</u>*

This instruction misleads the Jury in the interpretation of a term already defined by CACI 3204. The Judicial Counsel of California has designated the CACI as "the official instructions for use in the state of California." California Rule of Court 2.1050(a). The use of CACI is "strongly encouraged" and an affirmative rebuttable presumption exists for the use of an applicable CACI instruction if one exists.  CRC 2.1050(e).  CACI 3204  as proposed by Plaintiff is clear, comprehensible, and an accurate statement of the law.

1

2

**SPECIAL JURY INSTRUCTIONS**

3

[Defendant's *Proposal*]
**Jury Instruction Number 61**

4

5

6

7

The implied warranty of merchantability provides for a minimum level of quality. It does not impose a requirement that goods precisely fulfill the expectations of the buyer. With respect to the sale of vehicles, a new car need not be perfect in every detail; rather, the implied warranty of merchantability requires only that it be reasonably suited for ordinary use.

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

<u>*Defendant's Statement in Support of Instruction*</u>

2

3     Sources:   CACI 3210, Sources and Authority (quoting *American Suzuki*
*Motor Corp. v. Superior Court*, 37 Cal. App. 4th 1291, 1295-1296 (1995) [The

4    implied warranty of merchantability "does not 'impose a general requirement that
goods precisely fulfill the expectation of the buyer. Instead, it provides for a

5    minimum level of quality.'"]); *Brand v. Hyundai Motor Am.*, 226 Cal. App. 4th

6    1538, 1546 (2014) ("[A] new car need not 'be perfect in every detail'; rather, its
implied merchantability 'requires only that a vehicle be reasonably suited for

7    ordinary use.'") (quoting *Keegan v. Am. Honda Motor Co.*, 838 F. Supp. 2d 929,

8    945 (C.D. Cal. 2012)); *Herrera v. Ford Motor Co.*, 2022 WL 562267, at *6 (C.D.
Cal. Feb. 24, 2022) (quoting *Brand*); *Resnick v. Hyundai Motor Am., Inc.*, 2017 WL

9    1531192, at *12 (C.D. Cal. April 13, 2017) (citing *American Suzuki*, *Brand*, and

10   *Keegan*).

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

*Plaintiffs' Statement in Opposition to Instruction*

This instruction misleads the Jury in the interpretation of terms already extensively defined by CACI 3210. The Judicial Counsel of California has designated the CACI as "the official instructions for use in the state of California." California Rule of Court 2.1050(a). The use of CACI is "strongly encouraged" and an affirmative rebuttable presumption exists for the use of an applicable CACI instruction if one exists.  CRC 2.1050(e).  CACI 3210  as proposed by Plaintiff is clear, comprehensible, and an accurate statement of the law.

# SPECIAL JURY INSTRUCTIONS

[Defendant's *Proposal*]
## Jury Instruction Number 62

In order to prevail on their claim for breach of the implied warranty of merchantability, Plaintiffs must also establish that they revoked acceptance of their vehicle.

Revocation of acceptance must have occurred within a reasonable time after Plaintiffs discovered, or should have discovered, the breach and before and substantial change in condition of the vehicle which was not caused by its own defect. Revocation is not effective until the buyer notifies the seller of it.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

<u>*Defendant's Statement in Support of Instruction*</u>

Sources:  Cal. Comm. Code § 2608; *Simgel Co., Inc. v. Jaguar Land Rover N. Am., LLC*, 55 Cal. App. 5th 305, 315-316 (2020).

1    *Plaintiffs' Statement in Opposition to Instruction*

2

3        This his instruction misleads the jury in a number of respects.  First, there is

4    no requirement that Plaintiff revoke acceptance as part of his prima facie case—

5    whether there was *justifiable* revocation determines the measure of damages

6    only.  Even without *justifiable* revocation, Plaintiff may still prevail and obtain

7    damages for his breach of implied warranty claim.

8        Second, as outlined in Plaintiff's Motion *in Limine* No. 6, this

9    instruction misstates the law insofar as it seeks to inject an element of "timeliness"

10    into the question of *justifiable* revocation.  As *Mexia* makes clear, section 2602's

11    requirements "do not apply to an action brought under the Song-Beverly Act."

12    *Mexia v. Rinker Boat Co.*, 174 Cal. App. 4th 1297, 1307 (2009); *id.* at 1310 ("If the

13    Legislature intended the duration provision to impose a deadline for consumers to

14    give notice of defects under the Song–Beverly Act, it could have easily done so. It

15    did not."). *And Krotin v. Porsche Cars North America, Inc.* 38 Cal. App. 4th 294,

16    301–302 (1995) (the SBA "contains no 'reasonable time' requirement by which the

17    consumer must invoke the [SBA] or lose rights granted by that statutory scheme.").

18

19

20

21

22

23

24

25

26

27

28

## SPECIAL JURY INSTRUCTIONS

[Defendant's *Proposal*]
### Jury Instruction Number 635

If you find that Plaintiffs have proven a breach of the implied warranty of merchantability, then you must decide what damages, if any, they are entitled to recover.

To establish justifiable revocation, Plaintiffs must prove that they provided notice of revocation to FCA within a reasonable time after Plaintiffs discovered, or could have discovered, the defect or defects which rendered the vehicle unmerchantable, and before any substantial change in the condition of the vehicle not caused by its own defect or defects.

If you find that Plaintiffs justifiably revoked, the measure of damages is the amount paid or payable for the vehicle by Plaintiffs and any incidental damages caused by the breach.

If you find that Plaintiffs did not justifiably revoke acceptance, Plaintiffs are not entitled to any damages.

1

*Defendant's Statement in Support of Instruction*

2 Source: *Simgel Co., Inc. v. Jaguar Land Rover N. Am., LLC*, 55 Cal. App.

3 5th 305, 315-316 (2020).

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

*Plaintiffs' Statement in Opposition to Instruction*

This his instruction misleads the jury in a number of respects.  First, there is no requirement that Plaintiff revoke acceptance as part of his prima facie case— whether there was *justifiable* revocation determines the measure of damages only.  Even without *justifiable* revocation, Plaintiff may still prevail and obtain damages for his breach of implied warranty claim.

Second, as outlined in Plaintiff's Motion *in Limine* No. 6, this instruction misstates the law insofar as it seeks to inject an element of "timeliness" into the question of *justifiable* revocation.  As *Mexia* makes clear, section 2602's requirements "do not apply to an action brought under the Song-Beverly Act." *Mexia v. Rinker Boat Co.*, 174 Cal. App. 4th 1297, 1307 (2009); *id.* at 1310 ("If the Legislature intended the duration provision to impose a deadline for consumers to give notice of defects under the Song–Beverly Act, it could have easily done so. It did not."). *And Krotin v. Porsche Cars North America, Inc.* 38 Cal. App. 4th 294, 301–302 (1995) (the SBA "contains no 'reasonable time' requirement by which the consumer must invoke the [SBA] or lose rights granted by that statutory scheme.").

# <u>SPECIAL JURY INSTRUCTIONS</u>

[Defendant's *Proposal*]
## <u>Jury Instruction Number 6</u>

Plaintiffs' continued use of the vehicle after delivering it for repair is relevant to the issue of whether the vehicle was substantially impaired.

*<u>Defendant's Statement in Support of Instruction</u>*

Source:  CACI 3230 Directions for Use (citing CACI 3204).

1

_Plaintiffs' Statement in Opposition to Instruction_

2
Misstates CACI 3230. Continued use by the plaintiff of the Subject Vehicle

3
does not waive in any way his right to demand remedies under the Song Beverly

4
Act, nor does it entail reduction of such remedies.

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## SPECIAL JURY INSTRUCTIONS

[Defendant's *Proposal*]
## Jury Instruction Number 65

Plaintiffs' continued use of the vehicle after demanding that it be replaced or bought back reduces the amount of damages that you should award to Plaintiffs if you find that they have proved for breach of warranty against FCA.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

*Defendant's Statement in Support of Instruction*

Sources:  CACI 3230 Directions for Use (quoting *Ibrahim v. Ford Motor Co.*, 214 Cal. App. 3d 878, 898 (1989) ["Nothing in the language of either the Uniform Commercial Code or the Song-Beverly Act suggests that abrogation of the common law principles relating to continued use and waiver of a buyer's right to rescind was intended. … The legal principles governing continued use quoted previously are thus still applicable, as are the rules regulating the equitable right of setoff."]).

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

### *Plaintiffs' Statement in Opposition to Instruction*

Misstates CACI 3230. Continued use by the plaintiff of the Subject Vehicle does not waive in any way his right to demand remedies under the Song Beverly Act, nor does it entail reduction of such remedies.

# <u>SPECIAL JURY INSTRUCTIONS</u>

[Defendant's *Proposal*]
## <u>Jury Instruction Number 66</u>

**ADDITIONAL EXCLUSIONS FROM VEHICLE PURCHASE PRICE**

      In determining the purchase price of Plaintiffs' vehicle, you should exclude any amounts Plaintiffs paid for an optional service contract, any amounts that Plaintiffs paid for theft deterrent devices, and any amount that Plaintiffs paid for protective paint or surface coatings.

1

*Defendant's Statement in Support of Instruction*

2

Sources:    *Canesco v. Ford Motor Co.*, 570 F. Supp. 3d 872, 894 (S.D. Cal.
3   2021) ("The Court finds that this purchase price must be reduced by both the amount
4   of the Optional Service Contract, which is not a manufacturer-installed item, as well
    as Plaintiffs' negative equity. … Negative equity is not part of the 'new motor
5   vehicle' price, so the manufacturer should not be required to reimburse the buyer for
6   their cost."); *Carillo v. FCA USA, LLC*, 546 F. Supp. 3d 995, 1002 (C.D. Cal. 2021)
7   ("Because the Song-Beverly Act excludes restitution for 'non-manufacturer items
    installed by a dealer or buyer,' this optional [service contract] charge must be
8   excluded from the purchase price of the vehicle for purposes of the restitution
9   calculation."); *Herrera v. Ford Motor Co.*, 2022 WL 562267, at *5 (C.D. Cal. Feb.
10  24, 2022) ("Courts have also rejected Plaintiffs' arguments concerning
    reimbursement for GAP insurance because it is not a manufacturer-installed item.");
11  *Tovar v. FCA US LLC*, 2021 WL 3468111, at *4 (C.D. Cal. Apr. 23, 2021) (excluding
12  gap insurance and theft protection because "the law is clear: nonmanufactured items
    are not recoverable under the Song-Beverly Act"); *Rivera v. Ford Motor Co.*, 2020
13  WL 1652534, at *5 (C.D. Cal. Feb. 10, 2020) ("[N]egative equity stems from a loan
14  on a *different* vehicle made by a *different* manufacturer; it is not a component of the
    'new motor vehicle' price and therefore need not be reimbursed."); *De Leon v. Ford*
15  *Motor Co.*, 2019 WL 7195325, at *4 (C.D. Cal. Nov. 13, 2019) ("Here, based on
16  general principles of restitution, the Court finds that Defendant can deduct negative
    equity from the reimbursement amount. Restoring the status quo between Plaintiffs
17  and Defendant before Plaintiffs purchased the Ford Edge does not include
    reimbursing Plaintiffs for money owed on the Ford Fusion."); *Rupay v. Volkswagen*
18  *Grp. of Am. Inc.*, 2012 WL 10634428, at *5 (C.D. Cal. Nov. 15, 2012) ("It seems
19  fairly obvious that neither GAP insurance nor a third party service contract are
    'manufacturer installed items,' and they are in fact 'non-manufacturer items,' as they
20  are not manufactured by anyone, as they are both service contracts.").

21

22

23

24

25

26

27

28

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

*<u>Plaintiffs' Statement in Opposition to Instruction</u>*

<u>Misstates CACI 3241 and misinterprets Civil Code section 1793.2(d)(2)(B). The</u>
<u>statute provides hat when a manufacturer fails to conform a vehicle to warranty</u>
<u>after a reasonable number of repair attempts, the buyer is entitled to:</u>
<u>"...reimbursement in an amount **equal to the actual price paid or payable by the**</u>
<u>**buyer**, including any charges for transportation and manufacturer-installed</u>
<u>options, but **excluding nonmanufacturer items installed by a dealer or the**</u>
<u>**buyer**, and including any collateral charges such as sales or use tax, license fees,</u>
<u>registration fees, and other official fees, **plus any incidental damages** to which the</u>
<u>buyer is entitled under Section 2715 of the Commercial Code..."  (emphasis added)</u>
<u>The statute explicitly excludes **"nonmanufacturer items installed by a dealer or**</u>
<u>**the buyer."** Optional service contracts sold at the time of vehicle purchase do not</u>
<u>fall within this narrow exclusion. Moreover, Service Contracts are Part of the</u>
<u>Transaction Price.</u>

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# SPECIAL JURY INSTRUCTIONS

[Defendant's *Proposal*]
**Jury Instruction Number 67**

No civil penalty should be imposed against FCA if it acted reasonably and in good faith. Among the factors you may consider to determine whether FCA acted reasonably and in good faith are:

1) whether FCA reasonably believed that Plaintiffs' vehicle did conform to its warranties;

2) whether FCA reasonably believed that a reasonable number of repair attempts had not been made;

3) whether FCA knew that Plaintiffs' vehicle had not been repaired within a reasonable period or after a reasonable number of attempts;

4) whether FCA reasonably believed that Plaintiffs desired further repair rather than replacement or refund;

5) whether FCA attempted to fulfill its obligation to promptly replace or buy back Plaintiffs' vehicle by offering to repurchase the vehicle.

6) whether FCA had a written policy on the requirement to repair or replace.

1

*Defendant's Statement in Support of Instruction*

2

3
     Sources:  CACI 3244 Sources and Authority (quoting *Lukather v. General Motors, LLC*, 181 Cal. App. 4th 1041, 1051 (2010) [noting "the general policy

4
against imposing forfeitures or penalties against parties for their good faith, reasonable actions"] and *Kwan v. Mercedes Benz of N. Am.*, 23 Cal. App. 4th 174,

5
185 (1994) ["[T]he penalty under section 1794(c), like other civil penalties, is

6
imposed as punishment or deterrence of the defendant, rather than to compensate the plaintiff. In this, it is akin to punitive damages. Neither punishment nor

7
deterrence is ordinarily called for if the defendant's actions proceeded from an

8
honest mistake or a sincere and reasonable difference of factual evaluation. … This

9
might be the case, for example, if the manufacturer reasonably believed the product *did* conform to the warranty, or a reasonable number of repair attempts had not been

10
made, or the buyer desired further repair rather than replacement or refund."]);

11
*Jensen v. BMW of N. Am., Inc.*, 35 Cal. App. 4th 112, 136 (1995) ("Among the factors to be considered by the jury are whether: (1) the manufacturer knew the

12
vehicle had not been repaired within a reasonable period or after a reasonable

13
number of attempts, and (2) whether the manufacturer had a written policy on the requirement to repair or replace".); *Rupay v. Volkswagen Grp. of Am., Inc.*, 2012

14
WL 10634428, at *7 (C.D. Cal. Nov. 15, 2012) ("Given the Replacement and

15
Repurchase Offers, it is hard to imagine how Plaintiffs could possibly characterize [a manufacturer's] actions as a 'willful' breach of its obligations under the Song–

16
Beverly Act to offer either a replacement or repurchase."; granting manufacturer's

17
motion for summary adjudication as to the unavailability of civil penalties); *Hatami v. Kia Motors Am., Inc.*, 2009 WL 1396358, at *3 (C.D. Cal. April 20, 2009)

18
("[T]he Court finds willful conduct absent as Defendants initial response to

19
Plaintiffs' request and subsequent buy back offers do not evidence an intent to avoid fulfilling its duty under the Song–Beverly Act."; granting summary adjudication in

20
favor of the manufacturer on a Plaintiffs' claim for civil penalties).

21

22

23

24

25

26

27

28

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

*Plaintiffs' Statement in Opposition to Instruction*

Misstates CACI 3244

# SPECIAL JURY INSTRUCTIONS

[Defendant's *Proposal*]
## Jury Instruction Number 68

Any failure to comply with the law was not willful merely because it was intentional – that is, FCA did not act willfully simply because it knew what it was doing and intended to do what it was doing.  Rather, FCA acted willfully only if it deliberately or knowingly violated the law – that is, if FCA failed to comply with the law in a malicious or blameworthy manner or if FCA was subjectively aware that it was violating the law.

FCA did not act willfully if any failure to comply with the law was merely negligent – that is, if any failure was due to FCA's good faith and reasonable belief that it was complying.  Thus, FCA did not willfully violate the law if any failure to replace or repurchase Plaintiffs' vehicle was the result of a good faith and reasonable belief that the facts imposing a statutory obligation to do so were not present, even if that belief was objectively unreasonable.

1

*Defendant's Statement in Support of Instruction*

2    Sources:  *Kwan v. Mercedes-Benz of N. Am., Inc.*, 23 Cal. App. 4th 174, 185

3   (1994) (violation of the Act due to an "honest mistake" is not willful; "[A] violation

4   is not willful if the defendant's failure to replace or refund was the result of a good

5   faith and reasonable belief the facts imposing the statutory obligation were not

6   present.  This might be the case, for example, if the manufacturer reasonably

7   believed the product *did* conform to the warranty, or a reasonable number of repair

8   attempts had not been made, or the buyer desired further repair rather than

9   replacement or refund. [¶] Our interpretation of section 1794(c) is consistent with

10  the general policy against imposing forfeitures or penalties against parties for their

11  good faith, reasonable actions.  Unlike a standard requiring the Plaintiffs to prove

12  the defendant *actually knew* of its obligation to refund or replace, which would allow

13  manufacturers to escape the penalty by deliberately remaining ignorant of the facts,

14  the interpretation we espouse will not vitiate the intended deterrent effect of the

15  penalty.  And unlike a simple equation of willfulness with volition, which would

16  render 'willful' virtually all cases of refusal to replace or refund, our interpretation

17  preserves the Act's distinction between willful and nonwillful violations.")

18  (emphases in original); *Oregel v. Am. Isuzu Motors, Inc.*, 90 Cal. App. 4th 1094,

19

20  1104 (2001) (quoting *Kwan*); *Jensen v. BMW of N. Am., Inc.*, 35 Cal. App. 4th 112,

21  136 (1995) (looking to the manufacturer's subjective state of mind); *Kirzhner v.*

22  *Mercedes-Benz USA, LLC*, 9 Cal. 5th 966, 984 (2020) ("the Act creates a 'two-tier

23  system of damages' for *willful* and *negligent* violations of any of the Act's

24  affirmative obligations" (italics added)); *accord Lusardi Constr. Co. v. Aubry*, 1 Cal.

25  4th 976, 996-997 (1992) ("courts refuse to impose civil penalties against a party who

26  acted with a good faith and reasonable belief in the legality of his or her actions");

27  *Dominguez v. Am. Suzuki Motor Corp.*, 160 Cal. App. 4th 53, 59 (2008)

28  (manufacturer's refusal to offer to repurchase a motorcycle was not willful when it

was "unable to replicate the [reported] problem"); *Robertson v. Fleetwood Travel Trailers of Cal., Inc.* (2006) 144 Cal.App.4th 785, 815 (error not to admit evidence of the manufacturer's "belief" in its compliance); *Plate v. Sun-Diamond Growers* (1990) 225 Cal.App.3d 1115, 1124 (a party can "act[ ] in good faith and with a reasonable belief ... even where [it] was negligent or committed some error); *People v. Harris* (2015) 234 Cal.App.4th 671, 700, 184 Cal.Rptr.3d 198 (same).

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

*Plaintiffs' Statement in Opposition to Instruction*

Misstates CACI 3244, whose content already defines "Willfulness" under the context of Song Beverly Act Claims. The Judicial Counsel of California has designated the CACI as "the official instructions for use in the state of California." California Rule of Court 2.1050(a). The use of CACI is "strongly encouraged" and an affirmative rebuttable presumption exists for the use of an applicable CACI instruction if one exists. CRC 2.1050(e). CACI 3244 as offered by Plaintiff is clear, comprehensible, and an accurate statement of the law.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**SPECIAL JURY INSTRUCTIONS**

[Defendant's *Proposal*]
**Jury Instruction Number 69**


    The inability of a manufacturer to replicate a customer's concern with his or her vehicle can support a finding that any failure to comply with the law was not willful because that inability can support a good faith and reasonable belief that there was no defect and, thus, no duty to replace or repurchase the vehicle.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

*Defendant's Statement in Support of Instruction*

Source:  *Dominguez v. Am. Suzuki Motor Corp.*, 160 Cal. App. 4th 53, 59 (2008) (manufacturer's refusal to offer to repurchase a motorcycle was not willful when it was "unable to replicate the [reported] problem").

1

*Plaintiffs' Statement in Opposition to Instruction*

2      Misstates CACI 3244, whose content already defines "Willfulness" under the

3  context of Song Beverly Act Claims. The Judicial Counsel of California has

4  designated the CACI as "the official instructions for use in the state of California."

5  California Rule of Court 2.1050(a). The use of CACI is "strongly encouraged" and

6  an affirmative rebuttable presumption exists for the use of an applicable CACI

7  instruction if one exists.  CRC 2.1050(e).  CACI 3244 as offered by Plaintiff is clear,

8  comprehensible, and an accurate statement of the law.

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28